II. The next allegation of error is that his Honor the trial Judge charged the jury that, even if the plaintiff did invade the defendant's territory, yet, if they found that the defendant acquiesced in it, they might find this acquiescence was a waiver.

This was not a charge on the facts, and this assignment of error cannot be sustained.

III. The measure of damages need not be considered. There was no evidence of any damage.

IV. The last assignment of error refers to the second contract and has already been considered.

The judgment is affirmed.

---

### 10427

### SOUTHERN EXPRESS COMPANY v. SPIGNER, CO. TREAS.

#### (110 S. E. 403)

1. TAXATION—RIGHT TO DO EXPRESS BUSINESS UNDER CONTRACTS WITH RAILROADS HAD SITUS IN STATES IN WHICH RIGHTS WERE EXERCISED.—The situs of the right of express company to do an express business over railroad lines under contracts with the railroad companies, for the purpose of taxation, was within the State in which the rights were exercised.

2. TAXATION—EXPRESS COMPANY'S RIGHTS TO DO BUSINESS UNDER CONTRACTS WITH RAILROAD COMPANIES DID NOT CEASE TO BE TAXABLE ON GOVERNMENTAL CONTROL OF RAILROADS.—The right of express company to do business over the lines of railroads under contracts with the railroad companies did not cease to be a tabable property right when the Federal Government assumed control of the railroads.

3. TAXATION—EXPRESS COMPANY'S RIGHT TO DO BUSINESS OVER RAILROAD'S LINES NOT EXEMPT FROM TAXATION, BECAUSE USED AS AGENCY OF FEDERAL GOVERNMENT.—An express company's right to do business over railroad lines under contracts with railroad companies was not exempt from taxation by the State, because used during the year 1918 as an agency of the Federal Government under Act Cong., March 21, 1918 (U. S. Comp. St., 1918, U. S. Comp. St. Ann. Supp., 1919, §§ 3115 3-4a—3115 3-4p.)

Before Townsend, J., Richland, July, 1919.    Affirmed.

Action by Southern Express Co. against P. B. Spigner, Treasurer of Richland County.    From decree dismissing the complaint the plaintiff appeals.

Writ of error dismissed 256 U. S., ——, 42 Sup. Ct., ——, 66 L. Ed., ——.

The Circuit Decree was as follows:

This is an action under the provisions of Section 461 of the Civil Code of 1912, to recover certain taxes assessed and collected by the State upon certain intangible property of the plaintiff.    A trial by jury was waived, and all issues submitted to the Court.

The pleadings raise only three issues: (1) Did plaintiff's right to do an express business in this State under its contracts with several railroad companies cease to be a taxable property right, when the federal government assumed control of the railroads, December 28, 1917?    Protest, pars. 5, 7, and 8; complaint, pars. 4, 7, 11, 12, and 13.    (2) Was such property right exempt from taxation by the State during the year 1918, because it was then being used as a federal agency?    Protest, pars. 5 and 6; complaint, par. 6.    (3) Was the assessment of this intangible property right for the year 1918 at the same valuation as in 1917 erroneous as an exaggerated assessment?    Protest, par. 6; complaint, par. 14.

The method of assessment by the State is not questioned either in the written protest which accompanied the payment, Exhibit A attached to the complaint, nor in the complaint itself.    A motion was made at the hearing before me by plaintiff for leave to amend the complaint, so as to question the method of assessment.

The defendant's counsel objected to the amendment, on the ground that it came too late during the trial, and took them by surprise, and I refused to allow such amendment.    For many years prior to the 28th of

December, 1917, plaintiff conducted within this State its business as a common carrier of express matter, both intra and inter State. In the conduct of such business plaintiff made use of the transportation facilities over the several railroads and railroad systems in the State, under contracts existing with the railroad companies. The right to do business over these lines of railroad under the above-mentioned contracts was valued and assessed by the State, along with the other intangible property of plaintiff in this State, in both the year 1917 and 1918, at the sum of $447,553. The tangible property of the plaintiff in this State, such as real estate, trucks, wagons, horses, etc., used for local collections and deliveries, was assessed and valued in those years at $45,702.00. The situs of this intangible property was within this State where the rights were exercised. *Adams Express Co. v. Ohio,* 166 U. S., 185, 223, 224; 17 Sup. Ct., 604; 41 L. Ed., 965. For many years prior to the 28th day of December, 1917, all this property, both tangible and intangible, was returned and assessed for taxation in this State, and the taxes thereon were duly paid by the plaintiff.

On December 28, 1917, the President of the United States, acting through the Secretary of War, under the Act of Congress approved the 29th of August, 1916 (U. S. Comp. St., § 1974a), took possession of the railroad lines to meet the emergencies of the war, and has since operated them. "The identity of the carrier—the corporate entity—was not destroyed." Nor was it relieved from its existing contract obligations to third parties, except in so far as such contract obligations conflicted with the necessities of the government, and in so far only were such contract rights affected, suspended, or cancelled. It merely became "an agency of the government for the purpose of carrying out the policy of preferring the movement of troops, military equipment, and military supplies over

matters of general commerce." *Vaughn v. State of Alabama,* 17 Ala. App., 35; 81 South., 417.

Between December 28, 1917, and July 1, 1918, plaintiff continued to conduct its express business over said railroad lines in accordance with the terms of its prior existing contracts. It then, under an agreement between it and other express companies on the one part, and the Director General of Railroads on the other part, in evidence, dated June 21, 1918, voluntarily surrendered and canceled its contracts with the railroad companies in consideration of the agreement of said Director General to make similar contracts with the American Railway Express Company, a new corporation to be formed by the stockholders in the Southern Express Company along with the stockholders in certain other express companies doing business in the United States, which should continue the business of express transportation theretofore done by these constituent companies during the full period of Federal control, as that period is limited by Section 14 of "An Act to provide for the operation of transportation systems while under Federal control, for the just compensatoin of their owners, and for other purposes," approved March 21, 1918 (U. S. Comp. St., 1918, U. S. Comp. St. Ann. Supp., 1919, § 3115¾n). As a part of the same transaction and agreement plaintiff also conveyed, set over, and transferred to the American Railway Express Company all its other property, including the tangible property above-mentioned, used by it in carrying on its express transportation business for the use of the new company in conducting such business during said period of Federal control, it being expressly provided that upon the termination of such period the property conveyed by the plaintiff to the American Railway Express Company, or the equivalent of such property, should be reconveyed to plaintiff by the American Railway Express Company, which should then pass out of existence.

The American Railway Express Company was a mere agency of the government to use the property of the plaintiff and the other express companies entering into the agreement of June 21, 1918, for the conduct of the express transportation business during the period of Federal control.

It is manifest that the Federal control of such express business was based upon the war power, and is to cease upon the war's termination as provided in the Act of Congress of March 21, 1918. *No. Pac. R. Co. v. North Dakota,* 250 U. S., 135; 39 Sup. Ct., 502; 63 L. Ed., 897 (filed June 2, 1919). In the meanwhile plaintiff's property rights, temporarily taken over by the government agency, continue to exist, and the owners of the stock in the plaintiff company continue to enjoy the income derived from the use of this property under the contract of June 21, 1918, voluntarily made by it. This intangible property of the plaintiff within this State has not been taken away from it, nor has it ceased to exist, and it was on January 1, 1918, the date when the tax in question attached, subject to taxation by this State. The Act of Congress approved March 21, 1918, provided: "Nothing in this Act shall be construed to amend, repeal, impair, or affect the existing laws or powers of the States in relation to taxation." U. S. Comp. St., 1918, U. S. Comp. St. Supp., 1919, § 3115¾o. · As said by Mr. Justice Brewer, in *Adams Express Co. v. Ohio,* 166 U. S., 185, 225; 17 Sup. Ct., 604, 608; 41 L. Ed., 965: "This is eminently a practical age; that Courts must recognize things as they are and as possessing a value which is accorded to them in the markets of the world, and * * * no fine-spun theories * * * should interfere to enable these large corporations * * * to escape from bearing in each State such burden of taxation as· a fair distribution of the actual value of their property among those States requires." I therefore find and conclude that the intangible property rights

of the plaintiff, used by it in the conduct of its express transportation business in this State, were not destroyed, and did not cease to exist, when the government took over the railroads on December 28, 1917, and were the subject of taxation by this State on January 1, 1918.

I also conclude, in view of the above-quoted provisions in the Act of Congress of March 21, 1918, that this intangible property was not exempt from taxation by the State, because used during the year 1918 as an agency of the Federal Government. This conclusion is also supported by the decision of the United States Supreme Court in *Union Pacific R. R. Co. v. Peniston,* 18 Wall., 5; 21 L. Ed., 787, where that Court rejected the contention that the property of the Union Pacific was exempt from State taxation on account of the relation of the road to the Federal Government. The evidence fails to show that the valuation and assessment of the plaintiff's property for the year 1918 by the South Carolina tax commission and by the tax board of review was either exaggerated or excessive.

It is therefore ordered, adjudged, and decreed that the complaint in the above-entitled action be, and hereby is, dismissed.

*Messrs. Barron, McKay, Frierson & McCants,* for appellant, cite: *Tax lien affixed after proclamation of President taking over the Company:* 1 Civ. Code 1912, Sec. 320. *Right of plaintiff to do an express business under its contracts with the railroad ceased under government control:* 249 U. S., 377; 8 B. R. C., 483; 250 U. S., 163; 250 U. S., 135; 82 So., 458; 99 S. E., 846; 250 Fed., 880; 232 Mass., 465; 250 U. S., 195; 260 Fed., 280; 257 Fed., 138; 256 Fed., 247. *State has no power to tax propty or franchise being operated by Federal Government:* 4 Wheat, 316; 105 U. S., 460; 226 U. S., 404; 90 S. W., 594; 18 Wall, 5; 9 Wheat, 738. *Franchise not in use has no taxable value:* 57 Cent. L. J., 203; 249 U. S., 275; Art I,

Sec. 6, Const. 1895; Id., Art 3, Sec. 29; Art. 10, Sec. 1; 142 N. W., 476; 48 L. R. A: (N. S.), 1076. *Commission's action resulted in taxation of property outside the State*: 193 U. S., 490; 101 U. S., 153; 185 Fed., 250; 207 U. S., 20; 227 U. S., 278.

*Mr. Samuel M. Wolfe, Attorney General,* and *Martin & Blythe,* for respondent, cite: *Court sat as a jury and findings of fact are conclusive*: 61 S. E., 1075. *Property taxed was intangible assets such as the franchise, good will, etc.*: 165 U. S., 220. *Tax lien attaches at beginning of fiscal year*: Art. X., Sec. 10, Const. 1895; 1 Civ. Code 1912, Sec. 290; 34 S. C., 364; 95 S. C., 295. *Amendments discretionary*: 70 S. C., 550. *U. S. Supreme Court will interfere with State tax laws only where arbitary, capricious or confiscatory*: Adv. Ops. 1918-19, 208; Adv. Ops. 1919-29, p. 131; 92 U. S., 575. *Proportion of local property to foreign property is fair basis of taxation*: Adv. Ops. 1919-20, p. 1. *Remedy against illegal tax*: 1 Civ. Code 1912, Sec. 461. *Is exclusive*: Id., Sec. 462. *Courts will not disturb action of assessing boards*: 2 Cooley Tax., 1381-3. *Only where void*: 190 U. S., 426; 37 L. R. A., 371; 6 L. R. A., 207; 144 N. Y., 482; 71 S. E., 580. *Ministerial officers may be required to make assessment but not at particular figure*: 67 S. C., 153; 82 S .C., 141. *State can tax carrier's property within the State*: 165 U. S., 194; 39 Sup. Ct. Rep., 62; 41 L. Ed., 683. *Presumption against surrender of taxing power*: 106 S. C., 173. *Meaning of "franchise"*: 64 L. R. A., 919; 90 S. E., 568. *Unit mileage basis is fair*: 165 U. S., 194; 63 L. Ed., 330; 1 Civ. Code 1912, Sec. 320-4.

June 28, 1920.

The opinion of the Court was delivered by Mr. Chief Justice Gary.

For the reasons therein stated, the judgment of the Circuit Court is affirmed.