23886

GEOFFREY, INC., Appellant v. SOUTH CAROLINA
TAX COMMISSION, Respondent.

(437 S.E. (2d) 13)

Supreme Court

*Cary H. Hall, Jr.* of *Wyche, Burgess, Freeman & Parham, P.A.,* Greenville, *for appellant.*

*Chief Deputy Atty. Gen. Ray N. Stevens* and *Deputy Atty. Gen. Ronald W. Urban,* Columbia, *for respondent.*

Heard April 7, 1993.

Decided July 6, 1993.

HARWELL, Chief Justice:

Geoffrey, Inc. (Geoffrey), a foreign corporation, appeals from a ruling that requires it to pay South Carolina income tax and business license fees. We affirm.

## I. *FACTS*

Geoffrey is a wholly-owned, second-tier subsidiary of Toys R Us, Inc. (Toys R Us) incorporated in Delaware with its principal offices in that state. It has no employees or offices in South Carolina and owns no tangible property here.

In 1984, Geoffrey became the owner of several valuable trademarks and trade names, including "Toys R Us." Later

that year, Geoffrey executed a License Agreement (Agreement) that allows Toys R Us to use the "Toys R Us" trade name, as well as other trademarks and trade names, in all states except New York, Texas, Pennsylvania, Massachusetts, and New Jersey. The Agreement further grants Toys R Us a right to use Geoffrey's merchandising skills, techniques, and "know-how" in connection with marketing, promotion, advertising, and sale of products covered by the Agreement.

As consideration for the licenses granted by the Agreement, Geoffrey receives a royalty of one percent "of the net sales by [Toys R Us], or any of its affiliated, associated, or subsidiary companies, of the Licensed Products sold or the Licensed Services rendered under the Licensed Mark." Toys R Us reports the aggregate sales of all stores to Geoffrey in a single figure on a monthly basis. The royalty payment is made annually via wire transfer from a Toys R Us account in Pennsylvania to a Geoffrey account in New York.[1]

Toys R Us began doing business in South Carolina in 1985 and has since then made royalty payments to Geoffrey based on South Carolina sales. In 1986 and 1987, Toys R Us deducted the royalty payments made to Geoffrey from its South Carolina taxable income. The South Carolina Tax Commission (Commission) initially disallowed the deduction, but later took the position that Toys R Us was entitled to the deduction and that Geoffrey was required to pay South Carolina income tax on the royalty income. The Commission also held that Geoffrey was required to pay the South Carolina corporate license fee.

Geoffrey paid the taxes under protest and filed this action for a refund, claiming, among other things, that it did not do business in South Carolina and that it did not have a sufficient

---

[1] The net effect of this corporate structure has been the production of "nowhere" income that escapes all state income taxation. *See* Rosen, *Use of a Delaware Holding Company to Save State Income Taxes*, 20 Tax Adviser 180 (1989). One commentator has recognized such income as the "product of a divide and conquer strategy that some members of the corporate world have exercised effectively for decades." Corrigan, *Interstate Corporate Income Taxation—Recent Revolutions and a Modern Response*, 29 Vand. L. Rev. 423, 429 (1976). The strategy's effectiveness is unquestionable. In 1990, Geoffrey, without any full-time employees, had an income of approximately $55 million and paid no income taxes to any state.

nexus with South Carolina for its royalty income to be taxable here. The trial judge upheld the Commission's assessment of taxes against Geoffrey. Geoffrey appealed.

## II. *DISCUSSION*

S.C. Code Ann. § 12-7-230 (Supp. 1992), pursuant to which both foreign and domestic corporations are taxed, provides:

> [E]xcept as otherwise provided, every foreign corporation transacting, conducting, doing business, or having an income within the jurisdiction of this State, whether or not the corporation is engaged in or the income derived from intrastate, interstate, or foreign commerce, shall make a return and shall pay annually an income tax equivalent to five percent of a proportion of its entire net income, to be determined as provided in this chapter. The term "transacting," "conducting," or "doing business," as used in this section, includes the engaging in or the transacting of any activity in this State for the purpose of financial profit or gain.

Section 12-7-230 levies a tax on the income of foreign corporations "transacting, conducting, doing business, or having an income *within the jurisdiction of this State*," which "includes," but is not limited to, "the engaging in or the transacting of any activity in this State for the purpose of financial profit or gain." We construe this language as extending to the limits of the constitution South Carolina's authority to tax foreign corporations. Here, Geoffrey contends that the Due Process Clause, U.S. Const. amend. XIV, § 1, and the Commerce Clause, U.S. Const. art. I, § 8, cl. 3, prohibit the taxation of its royalty income by South Carolina. We disagree.

### A. *Due Process*

The Due Process Clause requires "some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax," and that the "income attributed to the state for tax purposes must be rationally related to values connected with the taxing State." *Quill Corp. v. North Dakota*, — U.S. —, —, 112 S.Ct.

1904, 1909-10, 119 L.Ed. (2d) 91, 102 (1992). Geoffrey argues that the Commission has failed to satisfy both of these requirements. We disagree.

The nexus requirement of the Due Process Clause can be satisfied even where the corporation has no physical presence in the taxing state if the corporation has purposefully directed its activity at the state's economic forum. *Quill,* — U.S. at —, 112 S.Ct. at 1909-10, 119 L.Ed. (2d) at 104. Geoffrey asserts that it has not purposefully directed its activities toward South Carolina. To support its position, Geoffrey points out that Toys R Us had no South Carolina stores when it entered into the Agreement and urges, therefore, that Toys R Us's subsequent expansion into South Carolina was unilateral activity that cannot create the minimum connection between Geoffrey and South Carolina required by due process.

In our view, Geoffrey has not been unwillingly brought into contact with South Carolina through the unilateral activity of an independent party. Geoffrey's business is the ownership, licensing, and management of trademarks, trade names, and franchises. By electing to license its trademarks and trade names for use by Toys R Us in many states, Geoffrey contemplated and purposefully sought the benefit of economic contact with those states. Geoffrey has been aware of, consented to, and benefitted from Toys R Us's use of Geoffrey's intangibles in South Carolina. Moreover, Geoffrey had the ability to control its contact with South Carolina by prohibiting the use of its intangibles here as it did with other states. We reject Geoffrey's claim that it has not purposefully directed its activities toward South Carolina's economic forum and hold that by licensing intangibles for use in South Carolina and receiving income in exchange for their use, Geoffrey has the "minimum connection" with this State that is required by due process. *See American Dairy Queen Corp. v. Taxation and Revenue Dep't,* 93 N.M. 743, 605 P. (2d) 251 (1979); *AAMCO Transmissions, Inc. v. Taxation and Revenue Dep't,* 93 N.M. 389 600 P. (2d) 841, *cert. denied,* 93 N.M. 205, 598 P. (2d) 1165 (1979).

In addition to our finding that Geoffrey purposefully directed its activities toward South Carolina, we find that the "minimum connection" required by due process also is satisfied by the presence of Geoffrey's intangible

property in this State. Geoffrey's Secretary, a certified public accountant, agreed during cross-examination that sales by Toys R Us in South Carolina create an account receivable for Geoffrey. In addition, the trial judge found that Geoffrey had a franchise in South Carolina.[2] That the presence of these intangibles is sufficient to sustain a tax is settled law. In *Virginia v. Imperial Coal Sales Co., Inc.*, 293 U.S. 15, 20, 55 S.Ct. 12, 14, 79 L.Ed. 171, 175 (1934), the United States Supreme Court stated:

> It is not the character of the property that makes it subject to such a tax, but the fact that the property has a situs within the state and that the owner should give appropriate support to the government that protects it. That duty is not less when the property is intangible than when it is tangible. Nor are we able to perceive any sound reason for holding that the owner must have real estate or tangible property within the state in order to subject its intangible property within the state to taxation.[3]

Geoffrey asserts that under the doctrine of *mobilia sequuntur personam*, the situs of its intangibles is its corporate headquarters in Delaware, not South Carolina. However, in *Mobil Oil Corp. v. Comm'r of Taxes of Vermont*, 445 U.S. 425, 100 S.Ct. 1223, 63 L.Ed. (2d) 510 (1980), the United States Supreme Court rejected the view that the constitution requires taxation of intangibles by allocation to a *single* situs,

---

[2] "In its simplest terms, a franchise is a license from the owner of a trademark or trade name permitting another to sell a product or service under that name or mark. More broadly stated, a 'franchise' has evolved into an elaborate agreement under which the franchise undertakes to conduct a business or sell a product or service in accordance with methods and procedures prescribed by the franchisor, and the franchisor undertakes to assist the franchisee through advertising, promotion, and other advisory services." *Black's Law Dictionary* 592 (5th ed. 1979). Geoffrey has not challenged the trial judge's finding that the Agreement created a franchise.

[3] Although the tax at issue in *Imperial Coal* was an *ad valorem* property tax imposed upon the accounts receivable of a Virginia corporation, we do not find that fact distinguishing. Authority to tax the property extends to income produced by the property. "That [a state] may tax the land but not the crop, the tree but not the fruit, the mine or well but not the product, the business but not the profit derived from it is wholly inadmissible." *Shaffer v. Carter*, 252 U.S. 37, 49-50, 40 S.Ct. 221, 225, 64 L.Ed. 445 (1920).

finding no adequate justification for preferring that rule over taxation by apportionment. The High Court concluded that:

> [a]lthough a fictionalized situs of intangible property sometimes has been invoked to avoid multiple taxation of ownership, there is nothing talismanic about the concepts of "business situs" or "commercial domicile" that automatically renders those concepts applicable when taxation of income from intangibles is at issue. The Court has observed that the maxim *mobilia sequuntur personam*, upon which these fictions of situs are based, "states a rule without disclosing the reasons for it." . . . The Court has also recognized that "the reason for a single place of taxation no longer obtains" when the taxpayer's activities with respect to the intangible property involve relations with more than one jurisdiction. . . . Even for property or franchise taxes, apportionment of intangible values is not unknown. . . . Moreover, cases upholding allocation to a single situs for property tax purposes have distinguished income tax situations where the apportionment principle prevails. (Citations omitted.)

*Id.* at 445, 100 S.Ct. at 1235, 63 L.Ed. (2d) at 525-26. *See also Wheeling Steel Corp. v. Fox*, 298 U.S. 193, 56 S.Ct. 773, 80 L.Ed. 1143 (1936) (intangibles may acquire a situs for taxation other than at the domicile of the owner if they have become integral parts of some local business); *Southern Express Co. v. Spigener*, 118 S.C. 413, 110 S.E. 403 (1920) (the situs of intangible property is within this State if the right afforded by it is exercised here); Dexter, *Taxation of Income from Intangibles of Multistate-Multinational Corporations*, 29 Vand. L. Rev. 401 (1976); J. Hellerstein & W. Hallerstein, *State Taxation*, Para. 9.08-.09 (2d ed. 1992). We reject Geoffrey's claim that its intangible assets are located exclusively in Delaware. Accordingly, we find that Geoffrey's purposeful direction of activity toward South Carolina as well as its possessing intangible property here provide a definite link between South Carolina and the income derived by Geoffrey from the use of its trademarks and trade names in this State.

We also find that the second prong of *Quill* test has been met. Contrary to Geoffrey's assertion, South Carolina has conferred benefits upon Geoffrey to which the

challenged tax is rationally related. As the United States Supreme Court recognized in *Curry v. McCanless*, 307 U.S. 357, 365-66, 59 S.Ct. 900, 905, 83 L.Ed. 1339, 1347 (1939):

> Very different considerations, both theoretical and practical, apply to the taxation of intangibles, that is, rights which are not related to physical things. Such rights are but relationships between persons, natural or corporate, which the law recognizes by attaching to them certain sanctions enforceable in courts. The power of government over them and the protection which it gives them cannot be exerted through control of a physical thing. *They can be made effective only through control over and protection afforded to those persons whose relationships are the origin of the rights. . . .* Obviously, as sources of actual or potential wealth—which is an appropriate measure of any tax imposed on ownership or its exercise—*they cannot be dissociated from the persons from whose relationships they are derived.* (Citations omitted.) (Emphasis added.)

The real source of Geoffrey's income is not a paper agreement, but South Carolina's Toys R Us customers. *Cf. Avco Financial Services Consumer Discount Co. v. Director, Division of Taxation*, 100 N.J. 27, 494 A. (2d) 788 (1985). By providing an orderly society in which Toys R Us conducts business, South Carolina has made it possible for Geoffrey to earn income pursuant to the royalty agreement. *See, e.g., Allied-Signal v. Comm'r of Finance*, 79 N.Y. (2d) 73, 580 N.Y.S. (2d) 696, 588 N.E. (2d) 731 (1991) (benefits afforded to an instate corporation inure to nonresident shareholders). That Geoffrey has received protection, benefits, and opportunities from South Carolina is manifested by the fact that it earns income in this state. *Accord AAMCO*, 93 N.M. at 393, 600 P. (2d) at 845 (quoting *Besser Co. v. Bureau of Revenue*, 74 N.M. 377, 394 P. (2d) 141 (1964)). That the tax is rationally related to these protections, benefits, and opportunities is evidenced by the fact that the State seeks to tax only that portion of Geoffrey's income generated within its borders. Based on the foregoing reasons, we hold that the Due Process Clause does not prohibit South Carolina's taxation of Geoffrey's royalty income.

## B. *Commerce Clause*

A tax will survive challenge under the Commerce Clause so long as it 1) is applied to an activity with a substantial nexus with the taxing state, 2) is fairly apportioned, 3) does not discriminate against interstate commerce, and 4) is fairly related to the services provided by the State. *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279, 97 S.Ct. 1076, 1079, 51 L.Ed. (2d) 326, 331 (1977). Relying on *Nat'l Bellas Hess, Inc. v. Dep't of Revenue of Ill.*, 386 U.S. 753, 87 S.Ct. 1389, 18 L.Ed. (2d) 505 (1967), Geoffrey contends that it does not have a substantial nexus with South Carolina because it is not physically present in this state. In our view, Geoffrey's reliance on the physical presence requirement of *Bellas Hess* is misplaced.[4]

It is well settled that the taxpayer need not have a tangible, physical presence in a state for income to be taxable there. The presence of intangible property alone is sufficient to establish nexus. *American Dairy Queen*, 93 N.M. at 747, 605 P. (2d) at 255. *See also Int'l Harvester Co. v. Wisconsin Dep't of Taxation*, 322 U.S. 435, 441-442, 64 S.Ct. 1060, 1063-64, 88 L.Ed. 1373, 1379 (1944) (a state may tax such part of the income of a nonresident as is fairly attributable either to property located in the state or to events or transactions which, occurring there, are within the protection of the state and entitled to the numerous other benefits which it confers); J. Hellerstein & W. Hellerstein, *supra*, at 6.08 (any corporation that regularly exploits the markets of a state should be subject to its jurisdiction to impose an income tax even though not physically present). A taxpayer who is domiciled in one state but carries on business in another is subject to taxation measured by the value of the intangibles used in his business. *Curry*, 307 U.S. at 368, 59 S.Ct. at 906, 83 L.Ed. at 1348. We hold that by licensing intangibles for use in this State and deriving income

---

[4] The U.S. Supreme Court recently revisited the physical presence requirement of *Bellas Hess* and, while reaffirming its vitality as to *sales and use taxes,* noted that the physical presence requirement had not been extended to other types of taxes. *Quill,* — U.S. at —, 112 S.Ct. at 1914, 119 L.Ed. (2d) at 108.

from their use here, Geoffrey has a "substantial nexus" with South Carolina.[5]

Geoffrey finally contends that even if it is subject to South Carolina income tax, all of its royalty income would be allocated or apportioned to Delaware pursuant to S.C. Code Ann. §§ 12-7-1120(5) or 12-7-1140 (1977 and Supp. 1992). These statutes are inapplicable to the income received by Geoffrey. Section 12-7-1120(5) allocates gains or losses from the sale of intangible personal property not connected with the business of the taxpayer, other than any intangible personal property held for sale to customers in the regular course of business. Section 12-7-1140 apportions the income of taxpayers whose principal business in this State is (a) manufacturing or any form of collecting, buying, assembling or processing goods and materials within this State, or (b) selling, distributing or dealing in tangible personal property within this state.

In conclusion, we hold that the taxation of Geoffrey's royalty income pursuant to section 12-7-230 is not prohibited by the Due Process Clause or the Commerce Clause of the United States Constitution. Our finding that Geoffrey may be taxes pursuant to section 12-7-230 settles the question whether Geoffrey must pay the corporate license fee. All corporations subject to section 12-7-230 are required to do so. *See* S.C. Code Ann. §§ 12-19-20, 12-19-70 (1977 & Supp. 1992). The order of the trial judge is

Affirmed.

CHANDLER, FINNEY, TOAL and MOORE, JJ., concur.

---

[5] Further discussion of the remaining requirements of the Commerce Clause is unnecessary. Our Due Process analysis of the benefits conferred upon Geoffrey applies with equal force here and need not be repeated. Moreover, Geoffrey raised no constitutional claim that the challenged tax is not fairly apportioned or discriminates against interstate commerce.