873 So.2d 25 (2004)
Cynthia BRIDGES, Secretary, Department of Revenue, State of Louisiana
v.
AUTOZONE PROPERTIES, INC.
No. 2003 CA 0492.
Court of Appeal of Louisiana, First Circuit.
January 5, 2004.
Order Denying Rehearing February 27, 2004.
*26 John J. Weiler, Cloyd F. Van Hook, Nicole F. Gould, New Orleans, for Plaintiff-Appellant, State of Louisiana, Department of Revenue.
Frederick W. Bradley, Nicole Crighton, New Orleans, for Defendant-Appellee, AutoZone Properties, Inc.
Before: CARTER, C.J., PARRO, and GUIDRY, JJ.
CARTER, C. J.
In this appeal, the Louisiana Department of Revenue challenges a judgment dismissing its suit against AutoZone Properties, Inc. due to a lack of personal jurisdiction.

FACTUAL AND PROCEDURAL BACKGROUND
In 1995, AutoZone, Inc. (AZI), a Nevada corporation engaged in the nationwide retail sale of automobile parts, changed its corporate structure. AZI itself became a holding company that provides management services for several subsidiaries. The ownership of AZI's retail stores was placed in AutoZone Development Corporation (Development), a corporate real estate investment trust (REIT). The operation of the retail stores was placed in AutoZone Stores, Inc. Development leased the retail store premises to AutoZone Stores, Inc. As a REIT, Development is required to distribute almost all of its income to its beneficial owners, and a majority of its shares were owned by AutoZone Properties, Inc. (Properties), another AutoZone corporation formed in Nevada for the sole business purpose of holding shares in Development.
During taxable years 1996 through 1998 (taxable period), there were at least 68 AutoZone retail stores in Louisiana that paid approximately $20 million in rental *27 income to Development.[1] On its Louisiana tax return, AutoZone Stores, Inc. took a deduction for rent paid to Development. Although Development filed a Louisiana return, it reported no income because of the dividends-paid deduction it took for the dividends paid to Properties. Properties filed no Louisiana tax return for the taxable period.
The Louisiana Department of Revenue (Department) conducted a corporate income and franchise tax audit of AZI, AutoZone Stores, Inc., Development, and Properties for the taxable period. The Department assessed taxes against Properties for the dividends it received from Development. After Properties did not pay the amount assessed, the Department filed this suit under LSA-R.S. 47:1561(3) and the Louisiana Long Arm Statute, LSA-R.S. 13:3201. In response, Properties filed a declinatory exception pleading the objection of lack of personal jurisdiction. After a hearing, the trial court signed a judgment sustaining the exception and dismissing the Department's petition against Properties. The trial court determined Properties did not have sufficient minimum contacts with the State of Louisiana to support the exercise of personal jurisdiction over it.
The Department appeals, contending the trial court manifestly erred in sustaining Properties's exception of lack of personal jurisdiction. The Department's position is that Louisiana has personal jurisdiction over Properties, because Properties received a "large, regular and continuing stream of untaxed rental income" attributable to AutoZone retail stores located in the state. On the other hand, Properties contends the judgment is correct, because Properties has no contacts with Louisiana. Properties claims it is merely a shareholder in Development, a corporation that does business in Louisiana, and this is insufficient to establish the minimum contacts necessary to subject it to this state's jurisdiction.

PERSONAL JURISDICTION
Jurisdiction over a person is the legal power and authority of a court to render a personal judgment against a party to an action. LSA-C.C.P. art. 6 A. A court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the United States and Louisiana Constitutions. LSA-R.S. 13:3201 B; LSA-C.C.P. art. 6 B. Thus, the limits of the Louisiana Long Arm Statute and of constitutional due process are coextensive, and the sole inquiry into jurisdiction over a nonresident is whether it comports with constitutional due process requirements. Alonso v. Line, 02-2644 (La.5/20/03), 846 So.2d 745, 750, cert. denied, ___ U.S. ___, 124 S.Ct. 434, 157 L.Ed.2d 311 (2003). Our review of the legal issue of personal jurisdiction over a nonresident is de novo. Eusea v. Blanchard, 01-2229 (La.App. 1 Cir. 12/20/02), 836 So.2d 333, 336, writ denied, 03-0210 (La.3/28/03), 840 So.2d 575.
The Due Process Clause requires some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax. The income attributed to the state for tax purposes must also be rationally related to values connected with the taxing state. Quill Corp. v. North Dakota, 504 U.S. 298, *28 112 S.Ct. 1904, 1909-1910, 119 L.Ed.2d 91 (1992) (Citations omitted). If a foreign corporation purposefully avails itself of the benefits of an economic market in the forum state, it may subject itself to the state's personal jurisdiction even if it has no physical presence in the state. Id., 112 S.Ct. at 1911.[2]

Relationship Between Properties and Development
A proper analysis in this case requires a more detailed look at the relationship between Properties and Development. Development is a Nevada corporation that owns all AutoZone retail store premises located in Louisiana. Development is registered to do business in Louisiana and files tax returns in Louisiana. Development collects rent from AutoZone Stores, Inc., the operator of the AutoZone retail stores, in the amount of 8% of AutoZone
Stores, Inc.'s gross sales. As a REIT,[3] Development is required to distribute at least 95% of its taxable income as dividends to its shareholders. Development, having elected REIT status, is treated as a conduit of income, and the incidents of tax are imposed on its shareholders. 34 Am. Jur.2d, Federal Taxation (2000) ¶ 20560.
Development's majority shareholder is Properties.[4] Properties was established as a holding company whose business purpose is to hold shares in Development. So, for the taxable period, Development collected rent from AutoZone Stores, Inc. and paid that income out as dividends to its shareholders, including Properties. Development paid no taxes on the distribution. As a Nevada corporation, Properties paid no income taxes in that state on the dividends it received from Development because there are no such taxes in Nevada. Properties *29 also filed no tax returns in Louisiana. This corporate structure resulted in substantial tax savings for Properties. According to Department calculations, the corporate income and franchise taxes allegedly owed by Properties to Louisiana for the taxable period were approximately $1 million.

"Economic Presence" Test
Many nationwide corporations have used corporate structures similar to that employed by AutoZone, including the use of "passive investment companies" and "intangible holding companies," for the purpose of reducing their taxable state income. See Hammack, 5 J. Multistate Tax'n 112, Taxing Out-of-State Entities with Intangible Assets: What Hath Geoffrey Wrought? (1995); Comeau, Noonan, Sabol, 10 J. Multistate Tax'n 6, Intangible Holding Companies: There is Life After Geoffrey (2001).
In an effort to combat these perceived tax avoidance abuses, some states have aggressively sought to exert personal jurisdiction over foreign entities with no physical presence in the state by finding a taxable nexus based on the entities' "economic presence" within the state. The most notable of these cases was Geoffrey, Inc. v. South Carolina, Tax Comm'n, 313 S.C. 15, 437 S.E.2d 13 (S.C.), cert. denied, 510 U.S. 992, 114 S.Ct. 550, 126 L.Ed.2d 451 (1993), in which the South Carolina
Supreme Court found that Geoffrey, Inc., an out-of-state subsidiary of Toys "R" Us, Inc., was subject to the state's taxation jurisdiction, even though Geoffrey had no physical presence in the state.[5] Geoffrey had been formed for the purpose of holding and managing the trademarks of Toys "R" Us and licensed them to Toys "R" Us, Inc., for use in most states, including South Carolina. Toys "R" Us paid Geoffrey a royalty of 1% of net sales pursuant to their license agreement.
In concluding the Quill due process nexus had been met, the Geoffrey court found Geoffrey had purposefully directed its activity to South Carolina's economic market by allowing the use of the trademarks in the state and by possessing intangible assets in the state in the form of the license agreement and account receivables. Id., 437 S.E.2d at 21. Further, the Geoffrey court concluded Geoffrey had received "protections, benefits, and opportunities" from South Carolina as was manifested by the fact that it earned income in South Carolina. Id., 437 S.E.2d at 22.
Several other states have adopted the expansive Geoffrey "economic presence" position by jurisprudence or by adopting rules or regulations allowing taxation of income derived from intangible assets having situs in the state.[6]See Hammack, 5J. Multistate Tax'n at 123-126.[7] There is a crucial difference, however, *30 between the Geoffrey rationale and the facts before us. Under Louisiana law, the Development shares owned by Properties, as well as the dividends received by Properties from these shares, are not present in Louisiana.
The Louisiana Supreme Court has noted that intangible property has no actual physical location, which has led to the development of three separate and distinct doctrines applicable to its taxation. United Gas Corp. v. Fontenot, 241 La. 488, 129 So.2d 748, 752, 758 (1961); United Gas Corp. v. Fontenot, 241 La. 564, 129 So.2d 776, 778-779 (1961).[8] First, intangible property is normally taxable at the legal domicile of the owner, which in the case of a corporation, is the state of incorporation. United Gas Corp., 129 So.2d at 758. If the intangible property is used in another state in such a way as to become an integral part of a business carried on within that state, the intangible property acquires a "business situs" in that state and is subject to taxation. Id. Lastly, where the business of the corporation is actually managed and functioning in a state other than the state of incorporation, a "commercial domicile" exists in the state where the corporation's principal place of business is, and the corporation's intangibles may be taxed there. Id., at 756, 758; United Gas Corp., 129 So.2d at 778.[9]
Applying these principles, we conclude the dividends received by Properties from its ownership of Development shares have not acquired a business situs in Louisiana. They were not acquired by Properties in the course of any business conducted in Louisiana. There is no indication that any physical evidence of the share ownership or receipt of dividends has ever occurred in Louisiana. No accounting records of the dividends have been kept in Louisiana. Properties plays no part in the decision-making process of Development with respect to the payment of dividends. Thus, the ownership and control of the shares remained in Properties, and there has been a complete lack of localization or integration of the dividends within Louisiana, which legally is of the essence of "business situs" for purposes of taxation. See McNamara v. George Engine Co., Inc., 519 So.2d 217, 222-223 (La.App. 5 Cir.1988); Gay v. Bessemer Prop., 159 Fla. 729, 32 So.2d 587, 591 (1947).
*31 Likewise, it is clear that Properties's commercial domicile is not in Louisiana, because it is a Nevada corporation, and its principal place of business is located in Nassau, The Bahamas, where all of its activities take place and are managed. A Bahamian employee, who is also a member of Properties's board of directors, is employed at the corporate office to maintain the company's books and records. The remaining members of Properties's board are employees of AutoZones, Inc., the AutoZone corporation that employs all Auto-Zone employees. Annual meetings of Properties's board of directors are held at the corporate office. All minutes of meetings and financial documents are filed in the corporate office in The Bahamas.
Further, Properties is not qualified to do business in Louisiana and conducts no business activities here. It owns no property in Louisiana, has no office or employees in Louisiana, and has never solicited business from or contracted with Louisiana residents. None of Properties's officers or directors reside or work in Louisiana, and no business meetings have been held here. Compare Pelto Oil Co. v. Collector of Rev., 384 So.2d 533, 539 (La.App. 4 Cir.1980) ("Commercial domicile" found in Louisiana where books and records of day-to-day operations, as well as secretarial, bookkeeping, leasing, geological, and engineering staff were located in New Orleans).[10]
Thus, even under the expansive "economic presence" approach adopted in Geoffrey, Properties does not have a sufficient nexus with Louisiana to satisfy the Due Process Clause. Aside from a clear lack of tangible or physical presence in this state, Properties's receipt of dividends from Development also does not constitute intangible property in this state. This is so even though that dividend income is derived from rental income from AutoZone retail stores located in Louisiana.[11]

CONCLUSION
For the foregoing reasons, we conclude the trial court correctly sustained Properties's exception pleading the objection of lack of personal jurisdiction. The judgment sustaining the exception, and dismissing *32 the Department's petition, is affirmed. Costs of this appeal in the amount of $2,320.73 are assessed to the Louisiana Department of Revenue.
AFFIRMED.

On Application for Rehearing
In footnote ten of our original opinion we cited Kevin Assoc., L.L.C. v. Brett Crawford, 01-2652 (La.App. 1 Cir. 11/8/02), 834 So.2d 465. We note that the supreme court recently reversed Kevin, finding that a non-resident parent corporation had commercial domicile in Louisiana and was therefore subject to jurisdiction and taxation in Louisiana. See Kevin Assoc., L.L.C. v. Brett Crawford, 03-0211 (La. 1/30/04), 865 So.2d 34. However, we find that case distinguishable from the facts in the instant case, because the parent corporation in Kevin had a much more pervasive presence in Louisiana.
We further note that all arguments raised by the Department in this application for rehearing were previously considered and found to be without merit. We reiterate that the Department's remedy appears to lie with the legislature.
NOTES
[1] At the hearing, Marsha Rankin, the Department's senior agent assigned to the AutoZone audit, testified there were 68 AutoZone retail stores in Louisiana during the taxable period. However, Donald Rawlins, Properties's president, testified there were over 3,000 retail stores nationwide, and in its appellate brief, Properties indicated that approximately 7% of the 3,000 stores, or 210, were located in Louisiana.
[2] Although Due Process Clause nexus requirements do not mandate a physical presence, the Quill court noted that physical presence is still required under a Commerce Clause nexus analysis. 112 S.Ct. at 1916. No Commerce Clause issue has been raised in this case.
[3] REITs are authorized as "a recognized form of association for the conduct of business" in Louisiana, and the income tax imposed on REITs is the same imposed on corporations but only on that part of the net income of the trust that is subject to federal income tax. LSA-R.S. 12:491-493. and LSA-R.S. 47:188. Generally,

a REIT is an entity that receives most of its income from passive real estate related investments and receives conduit treatment for income that is distributed to its shareholders. If an entity meets the qualifications for REIT status, a portion of its income generally is taxed to the investors without being subject to tax at the REIT level. The REIT is subject to a corporate level tax only on the income that it retains and on certain income from property that qualifies as foreclosure property. Thus, the Code provisions dealing with REITs require that substantially all of the income must be passed through to its shareholders on a current basis. The conduit effect, taxed at the shareholder level rather than the corporate level, is achieved through the mechanism of the dividends paid deduction. A REIT, in computing its real estate investment trust taxable income, reduces that amount by deduction for dividends paid thereby allowing the REIT to distribute untaxed ordinary income and capital gains to its shareholders. Further, to qualify for taxation as a REIT an organization must distribute as dividends for the taxable year, as defined in Section 561 but determined without regard to capital gains dividends, at least the sum of 95% of the real estate investment trust taxable income for the taxable year.
Corporate Property Invest, v. Director, Div. of Tax., 15 N.J.Tax 205, 207-208 (Super.A.D.1995) (quoting 10 J. Mertens, Law of Federal Income Taxation § 41A.42 at 84-85 (1988) (footnotes omitted)).
[4] Properties owns all of Development's common stock and most of its preferred stock. The remaining stock is owned by AutoZone employees who receive a $10 dividend per year for the one share of stock they each own.
[5] The South Carolina statute under which Geoffrey was taxed allowed taxation of out-of-state corporations "having an income within the jurisdiction of this State ...." S.C.Code § 12-7-230 (Supp.1992).
[6] In a ruling decided after the facts of the case before us, the Louisiana Department of Revenue, targeting trademark holding companies, declared that an out-of-state corporation's use of intangible property in the state will subject it to income taxation when the intangibles generate income in the state, the income-generating activity is purposeful, and the corporation's presence, as indicated by its intangibles, is more than de minimus. La. Dept. of Rev. Rul. No. 02-001 (May 13, 2002).
[7] For further discussion of the Geoffrey case and its aftermath, see Gaggini, Bick, Bots, 540 PLI/Tax 169: State Taxation of Passive Income Subsidiaries (October-November, 2002); J. Hellerstein & W. Hellerstein, State Taxation: Presence of Intangible Property in the State as a Basis for Jurisdiction to Tax Income from Such Property, ¶ 6.11 (3d Ed.2003) (W.G. & L).
[8] The first United Gas Corp. case cited, 129 So.2d 748, dealt with corporate income taxes, and the second United Gas Corp. case cited, 129 So.2d 776, dealt with corporate franchise taxesboth of which are at issue here.
[9] Although not cited by the Department, these concepts are embodied in LSA-R.S. 47:243, which applies to income taxation of nonresident corporations and provides, in pertinent part:

A. Items of gross allocable income shall be allocated directly to the states from which such items of income are derived, as follows:
....
(4) Other interest, dividends and profits from sales and exchanges of capital assets consisting of incorporeal property or rights shall be allocated to the state in which the securities or credits producing such income have their situs, which shall be at the business situs of such securities or credits if they have been so used in connection with the taxpayer's business as to acquire a business situs, or, in the absence of such a business situs, shall be at the ... commercial domicile of the taxpayer in the case of a corporation; provided that dividends upon stock having a situs in Louisiana received by a corporation from another corporation which is controlled by the former, through ownership of fifty percent or more of the voting stock of the latter, shall be allocated to the state or states in which is earned the income from which the dividends are paid, such allocation to be made in proportion to the respective amounts of such income earned in each state ....
Corporate franchise taxes are similarly computed. See LSA-R.S. 47:606 A(1)(i).
[10] Some courts have used an "alter ego" theory as an alternative means of finding that an out-of-state parent corporation has a taxable nexus with the taxing state based on its control of an in-state subsidiary's operations. See Teknika Elec. Corp. v. Satellite Earth Stations, 95-663 (La.App. 3 Cir. 4/17/96), 673 So.2d 1129, writ denied, 96-1268 (La.6/28/96), 675 So.2d 1125, and Copeland v. Gordon Jewelry Corp., 288 So.2d 404 (La.App. 4 Cir.), writ denied, 290 So.2d 911 (La. 1974). The "alter ego" theory does not apply to this case, because the evidence shows Properties did not control Development's operations within Louisiana. A non-resident parent company is not subject to the jurisdiction of Louisiana merely because its subsidiary has a presence in the state. Kevin Assoc., L.L.C. v. Crawford, 01-2652 (La.App. 1 Cir. 11/8/02), 834 So.2d 465, 469, writ granted, 03-0211 (La.4/21/03), 847 So.2d 1177. Further, a company holding securities is not doing business in a state when it receives dividend income from those securities. North Baton Rouge Dev. Co., Inc. v. Collector of Rev., 304 So.2d 293, 298 (La. 1974).
[11] We recognize that a business decision by an entity, such as AutoZone, to structure its organization within the parameters of a tax exception, so as to minimize its tax liability, is valid. See United States v. Carlton, 512 U.S. 26, 114 S.Ct. 2018, 2024, 129 L.Ed.2d 22 (1994) (O'Connor, J., concurring). We also note, however, that the AutoZone conglomerate is operating a significant number of retail stores in Louisiana and paying an inordinately low amount of taxes on this operation. It is unfortunate for the State of Louisiana that AutoZone has contrived a legal way to avoid paying what most would consider a fair share of taxes to the state. The Department's remedy in this case seems to lie with the legislature.