MBNA AMERICA BANK, N.A. & AFFILIATES, Petitioners,

v.

INDIANA DEPARTMENT OF STATE REVENUE, Respondent.

No. 49T10–0506–TA–53.

Tax Court of Indiana.

Oct. 20, 2008.

Larry J. Stroble, Barnes & Thornburg LLP, Indianapolis, IN Arthur R. Rosen, Donald M. Griswold, Jeffrey S. Reed, McDermott, Will & Emery LLP, New York, NY, Attorneys for Petitioners.

Steve Carter, Attorney General of Indiana, Andrew W. Swain, Chief Counsel, Tax Section, John D. Snethen, Jessica E. Reagan, Deputy Attorneys General, Indianapolis, IN, Attorneys for Respondent.

## ORDER ON RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

FISHER, J.

MBNA America Bank, N.A. & Affiliates (MBNA) appeals the final determination of the Indiana Department of State Revenue (Department) denying its claims for refund of Indiana Financial Institutions Tax (FIT) paid during the 1992–1998 tax years (years at issue). The matter is currently before the Court on the Department's motion for

summary judgment. The Court restates the issue as whether the Commerce Clause requires MBNA to have a physical presence in Indiana in order to be subject to the FIT.

## FACTS AND PROCEDURAL HISTORY

MBNA, a national bank with its principal place of business in Delaware, issues Visa and MasterCard credit cards to consumers throughout the United States, including Indiana. During the years at issue, MBNA did not maintain any place of business within Indiana, nor did its employees enter Indiana on business. MBNA acquired its Indiana customers through telephone and mail solicitation. MBNA extended credit to those customers and regularly received interest and fees from them.

On September 10, 2001, the Department issued a Notice of Assessment to MBNA seeking payment of the FIT for the years at issue. Consequently, on November 8, 2001, MBNA filed FIT returns for the years at issue and paid the tax in full. On October 15, 2004, MBNA filed a claim for refund of all FIT taxes paid. The Department denied MBNA's claim for refund on April 12, 2005.

On June 30, 2005, MBNA initiated this original tax appeal. On February 2, 2007, the Department filed a motion for summary judgment. This Court conducted a hearing on the Department's motion on October 30, 2007. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

■ Summary judgment is appropriate only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). In other words, summary judgment is designed to provide speedy resolution to those cases that may be determined as a matter of law because there are no factual disputes. *See Matonovich v. State Bd. of Tax Comm'rs,* 705 N.E.2d 1093, 1096 (Ind. Tax Ct.1999), *review denied.*

## DISCUSSION

Indiana's FIT, codified at Indiana Code §§ 6-5.5-1-1 through 6-5.5-9-5, is an excise tax on "the corporate privilege of transacting the business of a financial institution in Indiana." IND.CODE ANN. § 6-5.5-2-1(a) (West 1992). The FIT "is intended to tax both traditional financial institutions (such as banks and savings and loans, etc.), that are transacting business within Indiana, as well as other types of businesses that are deemed to be transacting the business of a financial institution in Indiana." 45 IND. ADMIN. CODE 17-2-1 (1992 and 1996). The parties have stipulated that MBNA is transacting business as a financial institution because it "regularly solicits business from potential customers in Indiana" and it "regularly engages in transactions with customers in Indiana that involve intangible property ... result[ing] in receipts flowing to [MBNA] from within Indiana[.]" *See* IND. CODE ANN. § 6-5.5-3-1(4), (6) (West 1992). (*See also* Resp't Designated Evid. Ex. A (hereinafter, Stip.Facts) ¶¶ 21–23.)

■ The Commerce Clause [1] prohibits states from imposing tax obligations on an out-of-state business unless it has a "substantial nexus" with the taxing state.[2] In

---

1. The Commerce Clause gives Congress exclusive authority to "[t]o regulate commerce with foreign nations, and among the several States[.]" U.S. CONST. art. I, § 8 cl. 3.

2. In 1977, the U.S. Supreme Court established a four-prong test for determining when a state tax is valid under the Commerce Clause. *See Complete Auto Transit v. Brady,*

its motion for summary judgment, the Department maintains that MBNA's economic presence in Indiana satisfies the substantial nexus requirement. (Resp't First Am. Br. in Supp. of [its] Mot. for Summ. J. (hereinafter, Resp't Br.) at 14–48.) The Department relies on numerous state court cases to support its motion. (*See, e.g.,* Resp't Br. at 15 n. 57.) MBNA, however, maintains that economic presence is not enough to meet the substantial nexus requirement; rather, it argues that physical presence is required. (Pet'r Br. in Resp. to [Resp't] Mot. for Summ. J. (hereinafter, Pet'r Br.) at 3–16.) To that end, MBNA claims that the Department has ignored the holdings in two United States Supreme Court cases: *National Bellas Hess v. Department of Revenue of Illinois,* 386 U.S. 753, 87 S.Ct. 1389, 18 L.Ed.2d 505 (1967) and *Quill Corporation v. North Dakota,* 504 U.S. 298, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992). MBNA claims these two cases "underpin[ ] all commerce clause nexus analysis." (*See* Pet'r Br. at 12–16.) Consequently, the resolution of this case hinges on: 1) whether the holdings of *Bellas Hess* and *Quill* control, and, if not, 2) whether economic presence satisfies the substantial nexus requirement for purposes of Indiana's FIT.

Before 1967, the Supreme Court explained that when determining whether a nexus existed between a taxing State and a taxpayer, physical presence was not the sole factor. *See, e.g., Nw. States Portland Cement v. Minnesota,* 358 U.S. 450, 452, 79 S.Ct. 357, 3 L.Ed.2d 421 (1959) (holding that a state may tax the "net income from the interstate operations of a foreign corporation . . . provided the levy is not discriminatory and is properly apportioned to local activities within the taxing State forming sufficient nexus to support the same").[3] Then, in 1967, the Supreme Court held that *some* physical presence in the taxing State was required for a nexus to exist. *Nat'l Bellas Hess v. Dep't of Revenue of Ill.,* 386 U.S. 753, 756–60, 87 S.Ct. 1389, 18 L.Ed.2d 505 (1967). Specifically, the Supreme Court held that an out-of-state vendor was not required to remit use tax when its only activity in the taxing State was through the mail or a common carrier. *See id.* at 757–58, 87 S.Ct. 1389 (explaining that taxpayers with a physical presence in the taxing State were "plainly accorded the protection and services of the [S]tate," while those whose only connection was by mail or common carrier were "not receiving benefits for which [the taxing State could] exact a price").

In 1992, the Supreme Court in its *Quill* opinion reaffirmed the physical presence rule of *Bellas Hess. Quill Corp. v. North Dakota,* 504 U.S. 298, 317–18, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992). After discussing prior cases in which it had replaced bright-line tests with "more contextual balancing inquiries," the Court noted that "the *Bellas Hess* rule has engendered substantial reliance and has become part of the basic framework of a sizeable [mail-order] industry." *See id.* at 316–17, 112 S.Ct. 1904. As a result, the Court stated: "although in our cases subsequent to *Bellas Hess* and *concerning other types of taxes we have not adopted a similar*

---

430 U.S. 274, 279, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977). Substantial nexus, the first prong of the four part test, is, as the parties have agreed, the only prong at issue in this case.

**3.** Seven months after the Supreme Court's opinion in *Portland Cement* was issued, however, Congress enacted a statute commonly known as Public Law 86–272. *See* 15 U.S.C. § 381 (1959). This law essentially narrowed *Portland Cement's* holding by prohibiting a state from imposing a net income tax if a company's only state activities are solicitation of orders for sales of tangible personal property. *See id.*

bright-line, physical-presence require-ment, our reasoning in those cases does not compel that we now reject the rule that *Bellas Hess established in the area of sales and use taxes.*" *Id.* at 317, 112 S.Ct. 1904 (emphases added).

█ Based on this language and a thorough review of relevant case law, this Court finds that the Supreme Court has not extended the physical presence requirement beyond the realm of sales and use taxes. Thus, *Bellas Hess* and *Quill* do not control the outcome of this case. Accordingly, the Supreme Court has left the door open for this Court to determine, as a matter of first impression, whether an economic presence can also satisfy the substantial nexus requirement for purposes of the FIT.

Turning to that issue, the Court's research, and that of the parties, reveals that many state courts have examined whether economic presence satisfies the substantial nexus requirement. For example, several courts have upheld the imposition of tax on the income of a taxpayer who licensed intangibles in, but did not have a physical presence in, a taxing State. *See, e.g., Bridges v. Geoffrey, Inc.,* 984 So.2d 115 (La.App.2008, *review denied; Geoffrey, Inc. v. Oklahoma Tax Comm'n,* 132 P.3d 632 (Okla.Civ.App.2006); *Lanco, Inc. v. Dir., Div. of Taxation,* 379 N.J.Super. 562, 879 A.2d 1234 (2005), *aff'd by* 188 N.J. 380, 908 A.2d 176 (2006); *A & F Trademark, Inc. v. Tolson,* 167 N.C.App. 150, 605 S.E.2d 187 (2004); *Geoffrey, Inc. v. South Carolina Tax Comm'n,* 313 S.C. 15, 437 S.E.2d 13 (1993). More relevantly, however, two other state courts have analyzed whether the imposition of tax on the income of a company who issued credit cards in the taxing state, but did not have a physical presence therein, was proper.

In the first case, the Tennessee Court of Appeals determined that *Bellas Hess* and *Quill* were controlling, and therefore the company had no franchise/excise tax liability. *See J.C. Penney Nat'l Bank v. Johnson,* 19 S.W.3d 831 (Tenn.Ct.App.1999). In so doing, the court merely stated that it was "not within [its] purview [ ] to discern" whether there were "[a]ny constitutional distinctions between the franchise and excise taxes presented [in its case] and the use taxes contemplated in *Bellas Hess* and *Quill* [.]" *Id.* at 839 (emphases added).

In the second case, the Supreme Court of West Virginia reached an opposite conclusion. *See Tax Comm'r of W. Va. v. MBNA Am. Bank,* 220 W.Va. 163, 640 S.E.2d 226 (2006). Specifically, that court concluded that "*Quill's* physical-presence requirement for showing a substantial Commerce Clause nexus applies only to use and sales taxes and not to business franchise and corporation net income taxes." *Id.* at 232. The court provided four reasons for its conclusion. First, it explained that *Quill's* reaffirmation of the physical presence rule in *Bellas Hess* "is grounded primarily on *stare decisis.*" *Id.* Second, the court found that the *Quill* Court expressly limited its holding to sales and use taxes. *Id.* Third, the court noted that different types of taxes imposed different levels of burdens on interstate commerce. *Id.* at 233–34. More specifically, the court found that the collection/remittance requirements with respect to sales and use taxes placed a greater burden on interstate commerce than those required for franchise and income taxes. *Id.* Finally, the court believed that "the mechanical application of a physical-presence standard to franchise and income taxes is a poor measuring stick of an entity's true nexus with a state" in today's world: "electronic commerce now makes it possible for an entity to have a significant economic presence in a state absent any physical presence there." *Id.* at 234.

 Although neither of these holdings are binding on this Court, it finds the reasoning of the West Virginia Supreme Court in *MBNA* more instructive and persuasive than that of the Tennessee Court of Appeals in *J.C. Penney*. Consequently, this Court adopts the reasoning in *MBNA* and holds that economic presence is sufficient to establish the substantial nexus requirement.

The stipulated facts in this case indicate that, during the years at issue, MBNA had an economic presence in Indiana. MBNA regularly solicited business from Indiana customers. (Stip. Facts ¶¶ 7–10.) MBNA's Indiana customers exceeded a *"de minimis"* number. (Stip. Facts ¶ 17.) Furthermore, MBNA regularly received interest and fees from those customers.[4] (Stip. Facts ¶ 19 (footnote added).) Finally, the Court notes that MBNA's confidential FIT returns reported significant gross receipts attributable to its Indiana customers. Thus, during the years at issue, MBNA had a substantial nexus with Indiana for purposes of the FIT.[5]

## CONCLUSION

The Commerce Clause does not require MBNA to have a physical presence in Indiana to be subject to the FIT—its economic presence is enough. The Department's motion for summary judgment is therefore GRANTED.

---

4. MBNA admits that during the years at issue, it had pending in Indiana's court system debt collection actions also exceeding a *"de minimis"* number. (Resp't Designated Evid. Ex. A ¶ 20.)

5. MBNA contends that such a holding reduces the substantial nexus requirement of the Commerce Clause to the minimum contacts requirement of the Due Process Clause. (*See* Pet'r Br. in Resp. to [Resp't] Mot. for Summ. J. at 5.) The Court disagrees, as any contact less than physical presence is not necessarily equivalent to minimum contacts.