2006 OK CIV APP 27

**GEOFFREY, INC., Appellant,**

v.

**The OKLAHOMA TAX COMMISSION, Appellee.**

No. 99,938.

Court of Civil Appeals of Oklahoma, Division No. 1.

Dec. 23, 2005.

Certiorari Denied March 20, 2006.

As Corrected April 12, 2006.

Timothy M. Larason, Andrews Davis, Oklahoma City, OK, and Paul H. Frankel, Morrison & Foerster LLP, New York, NY, for Appellant.

Douglas B. Allen, General Counsel, Lyn Martin–Diehl and J.L. Miller, Assistant General Counsel, Oklahoma Tax Commission, Oklahoma City, OK, for Appellee.

## OPINION

ADAMS, Presiding Judge.

¶ 1 Geoffrey, Inc. (Geoffrey), a Delaware corporation, appeals an Order of the Oklahoma Tax Commission (OTC) imposing corporate income tax on royalties Geoffrey received from the licensing of its intangible personal property during the years at issue, i.e., 1992, 1993 and 1994 (tax years). Geoffrey argues such action violates the Commerce Clause [1] and the Due Process Clause [2] of the United States Constitution. We disagree and affirm the order.

---

1. Article I, Section 8, United States Constitution.

2. As applicable to the states, Amendment XIV, Section 1, United States Constitution.

## STANDARD OF REVIEW

¶2 The appellate courts will review the entire record made before an administrative agency acting in its adjudicatory capacity to determine whether the findings and conclusions set forth in the agency order are supported by substantial evidence. An adjudicatory order will be affirmed on appeal if the record contains substantial evidence in support of the facts upon which the decision is based and the order is otherwise free of error. *Samson Hydrocarbons Co. v. Oklahoma Tax Commission*, 1998 OK 82, 976 P.2d 532. However, the OTC's legal rulings, like those made by a district court judge, are on review subject to an appellate court's plenary, independent and nondeferential reexamination. *Blitz U.S.A., Inc. v. Oklahoma Tax Commission*, 2003 OK 50, 75 P.3d 883.

## FACTS

¶3 The following facts are not in dispute. Geoffrey was formed and incorporated in 1984 in Delaware as part of a reorganization of its parent corporation, Toys 'R' Us, Inc. (Toys, Inc.), which operates retail toy and children's stores in Oklahoma and other states under the "Toys 'R' Us" and "Kids 'R' Us" names. In exchange for Geoffrey's stock, Toys, Inc. assigned certain intangible personal property, *i.e.*, trademarks, service marks and trade names, including the "Geoffrey Giraffe" logo (collectively, Marks), to Geoffrey. Geoffrey subsequently entered into a licensing agreement with Toys, Inc., which permitted the use of the Marks in exchange for the payment of royalty fees, equal to three percent of the licensee's net sales for use of the "Toys 'R' Us" Marks and two percent of the licensee's net sales for use of the "Kids 'R' Us" Marks.[3] Geoffrey's sole activity and source of income is the licensing of its Marks to Toys, Inc. and other affiliates/third-party licensees. Toys, Inc., Geoffrey's only licensee in Oklahoma, paid income tax to the State of Oklahoma during the tax years, however, its taxable income was reduced by the deduction of its royalty expenses paid to Geoffrey.

¶4 During the tax years, Geoffrey had no full-time employees, and for its one or more part-time employees, it leased office space in Delaware for $100 per month from an accounting firm with which it had contracted to perform bookkeeping and other services for Geoffrey for a $150 per month fee. Geoffrey also paid a $300,000 annual fee to Toys 'R' Us–NJ, Inc., a wholly-owned subsidiary of Toys, Inc., for treasury, tax, accounting and management services, all of which were generally performed in New Jersey. Geoffrey does not own or lease real or tangible personal property, maintain an office or have any employees or officers in the state of Oklahoma.

¶5 Geoffrey did not file Oklahoma corporate income tax returns for the tax years at issue. By letter dated January 21, 1998, the OTC proposed to assess income tax and interest against Geoffrey in the amount of $163,189 and $90,154, respectively, for a total of $253,343. On February 19 of the same year, Geoffrey filed a formal protest objecting to the proposed assessment. After lengthy discovery, hearings were held before an Administrative Law Judge (ALJ). The ALJ recommended denial of Geoffrey's protest, and subsequently OTC issued a Final Order which adopted without modification the Findings of Fact, Conclusions of Law and Recommendations made by the ALJ.

¶6 In pertinent part, OTC concluded that: It is evident that the Commerce Clause analysis for Oklahoma income tax must be controlled *not by physical presence* but by the substantial nexus announced in *Complete Auto Transit*. The licensing of [Geoffrey's] Marks for use within Oklahoma's economic market for the purpose of generating substantial income for [Geoffrey], establishes sufficient nexus between the royalty income and the legitimate interests of the State of Oklahoma and justifies the imposition of the state income tax. (Emphasis added.)

The OTC also concluded that Geoffrey "has purposefully directed its activities toward residents of this State and availed itself of the benefits of Oklahoma's economic market

---

**3.** Royalties paid by Toys, Inc. to Geoffrey for the tax years which correlate to Oklahoma stores using the Marks are as follows: 1992—$808,342; 1993—$1,022,265, and 1994—$1,014,703.

... Therefore, [Geoffrey] possesses the minimum connection with this State required by due process." After finding that Geoffrey was a unitary business, the ALJ found that its royalty income is apportionable, rather than allocable to the state of its legal domicile, by a "modified one-factor apportionment formula" using Geoffrey's sales factor, and that the formula "is an accurate reflection of the business done in Oklahoma" by Geoffrey. Geoffrey's appeal to this court followed.

## ANALYSIS

¶ 7 Geoffrey argues that it is not subject to Oklahoma corporate income tax, claiming (1) the Commerce Clause requires a "substantial nexus" through in-state *physical presence,* and (2) the Due Process Clause requires "minimum contacts." It denies the existence of these requirements in this case,[4] citing as authority for both arguments, *Quill Corp. v. North Dakota,* 504 U.S. 298, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992).

¶ 8 In *Quill,* the U.S. Supreme Court explained that the Due Process and Commerce Clauses, although "closely related," are "analytically distinct" and reflect "different constitutional concerns." 504 U.S. at 305, 112 S.Ct. at 1909. As in *Quill,* we consider Geoffrey's arguments separately, beginning first with the alleged violation of the Commerce Clause.

### Commerce Clause

¶ 9 Geoffrey contends the *Quill* Court "reaffirmed the 'bright line, physical presence requirement'" for taxation under the Commerce Clause established in *National Bellas Hess, Inc. v. Department of Revenue of Illinois,* 386 U.S. 753, 87 S.Ct. 1389, 18 L.Ed.2d 505 (1967) and "held that the 'substantial nexus' requirement of the Commerce Clause precludes a state from compelling a mail-order vendor with *no physical presence* in the taxing state to collect *use* taxes on goods

4. On appeal, Geoffrey does not argue that it is not a taxable corporation under either 68 O.S. 2001 § 2355(C), which imposes a tax "upon the Oklahoma taxable income of every corporation *doing business* within this state or *deriving income from sources within this state* in an amount equal to six percent (6%) thereof," or 68 O.S. 2001 § 2355(D), which provides, "in lieu of the tax imposed in the first paragraph of [§ 2355(C)]

sold to in-state purchasers ('physical presence requirement')." Therefore, Geoffrey argues, the OTC order is erroneous because the " 'physical presence' requirement under *Quill* is equally applicable to Oklahoma corporate income tax."

██ ¶ 10 We do not agree with Geoffrey's interpretation that *Quill* expanded the *Bellas Hess* bright-line, physical presence requirement for use and sales taxes to *all* types of taxes. Both *Bellas Hess* and *Quill* involved attempts by a state to require out-of-state mail-order vendors to collect and pay *use taxes* on goods purchased within the state despite the vendors having no in-state outlets or sales representatives. The *Quill* Court went to great lengths to clarify that "while contemporary Commerce Clause jurisprudence might not dictate the same result if the issue were to arise for the first time today," the *Bellas Hess* bright-line, physical presence rule is "not inconsistent" with *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), which the *Quill* Court described as establishing "a four-part test that *continues to govern* the validity of state taxes under the Commerce Clause," 504 U.S. at 310, 112 S.Ct. at 1912 (Emphasis added.) The *Quill* Court then explained:

> Under *Complete Auto's* four-part test, we will sustain a tax against the Commerce Clause challenge so long as the "tax [1] is applied to an activity with a substantial nexus with the taxing state, [2] is fairly apportioned, [3] does not discriminate against interstate commerce, and [4] is fairly related to the services provided by the State." *Bellas Hess concerns the first of these tests and stands for the proposition that a vendor whose only contacts with the taxing State are by mail or common carrier lacks the "substantial nexus" required by the Commerce Clause.* 504 U.S. at 311, 112 S.Ct. at 1912 (Cite omitted; emphasis added.)[5]

... there shall be imposed on foreign corporations ... a tax of six percent (6%) ... where such income *is received from sources within Oklahoma."* (Emphasis added.)

5. As in *Bellas Hess,* this appeal involves only the first of *Complete Auto's* four-part test.

¶ 11 After discussing post-*Complete Auto* cases that approvingly cited *Bellas Hess*, the *Quill* Court held that "the nexus requirements of the Due Process and Commerce Clauses are not identical," explaining that:

[t]he due process nexus analysis requires that we ask whether an individual's connections with a State are substantial enough to legitimate the State's exercise of power over him ... In contrast, the Commerce Clause and its nexus requirement are informed not so much by concerns about fairness for the individual defendant as by structural concerns about the effects of state regulation on the national economy ... *[w]e have ruled that [the Commerce] Clause ... bars state regulations that unduly burden interstate commerce.* The *Complete Auto* analysis reflects these concerns about the national economy. The second and third parts of that analysis ... prohibit taxes that pass an unfair share of the tax burden onto interstate commerce. *The first and fourth prongs ... limit the reach of state taxing authority so as to ensure that state taxation does not unduly burden interstate commerce.* 504 U.S. at 312–313, 112 S.Ct. at 1913 (Emphasis added.)

In the footnote immediately following this explanation, the *Quill* Court gave an example of how North Dakota's *use* tax would unduly burden interstate commerce *absent* the *Bellas Hess* rule, *i.e.*, under its collection duty, which is imposed on every vendor who advertises in the State three times in a single year, a publisher who included a subscription card in three issues of its magazine would be subject to that duty. The Court then stated "What is more significant, similar obligations might be imposed by the Nation's 6,000–plus taxing jurisdictions," and as authority for such, quoted the *Bellas Hess* Court's discussion of the specific burdens presented by sales and use taxes—"the many variations in rates of tax, in allowable exemptions, and in administrative and record-keeping requirements could entangle [a mail-order house] in a virtual welter of complicated obligations." *Quill,* 504 U.S. at 313, 112 S.Ct. at 1914.

¶ 12 Our interpretation is further supported by the *Quill* Court's explanation:

In sum, although in our cases subsequent to *Bellas Hess* and concerning other types of taxes we have not adopted a similar bright-line, physical-presence requirement, our reasoning in those cases does not compel that we now reject the rule that *Bellas Hess* established *in the area of sales and use taxes.* To the contrary, the continuing value of a bright-line rule in this area and the doctrine and principles of *stare decisis* indicate that the *Bellas Hess* rule remains good law. 504 U.S. at 317, 112 S.Ct. at 1916 (Emphasis added.)

¶ 13 Of the six cases cited by Geoffrey to support its claim that "most states that have dealt with the issue" have applied *Quill's* physical presence requirement, only two decided the constitutional question before us— whether *Quill* should be extended to allow taxation of Geoffrey's income earned from the licensing of its Marks for use by a related corporation in Oklahoma.[6] The first case, in which the New Jersey Tax Court decided that a Delaware corporation's income from the licensing of its intangible property to its affiliated corporation was not taxable because physical presence is a necessary element of the Commerce Clause nexus for taxation, was recently reversed by *Lanco, Inc. v. Di-*

---

6. One of the cases cited by Geoffrey, *In re Appeal of Intercard, Inc.,* 270 Kan. 346, 14 P.3d 1111 (2000), involved the imposition of state use tax. Two other cases involved similar facts as this case, but were either decided on other grounds or have been reversed by a higher court. In *Acme Royalty Co. v. Director of Revenue,* 96 S.W.3d 72 (Mo.2002), the Supreme Court's decision that the out-of-state corporation's royalty income was not taxable was based on Missouri tax statutes, not Due Process or Commerce Clause violations. The sixth case cited by Geoffrey, *Kevin Associates, L.L.C. v. Crawford,* 834 So.2d 465 (La.Ct.App.2002), has been reversed by the Louisiana Supreme Court, 865 So.2d 34 (La.2004), which held that the Delaware stock holding company had its "commercial domicile" in Louisiana, and thus, it had "substantial contacts" with and a "physical presence" in that state such that the imposition of the corporate income and franchise taxes did not violate the Due Process and Commerce Clauses. The Court did not adopt "physical presence" as a requirement for satisfying the substantial nexus prong of the *Complete Auto* test. We also note that the Court of Appeals decision did *not* address a physical presence requirement for Commerce Clause validity of a state tax.

rector, Div. of Taxation, 379 N.J.Super. 562, 879 A.2d 1234 (N.J.Super.A.D., 2005). The Lanco Court held that "Quill does not apply to taxes other than sales and use taxes," 879 A.2d at 1238, and in concluding such, relied upon: (1) the Quill Court's statement, 504 U.S. at 314, 112 S.Ct. at 1914, that "[w]e have not, in our review of other types of taxes, articulated the same physical-presence requirement that Bellas Hess established for sales and use taxes;" (2) Geoffrey, Inc. v. South Carolina Tax Commission, 313 S.C. 15, 437 S.E.2d 13 (S.C.1993), cert. denied, 510 U.S. 992, 114 S.Ct. 550, 126 L.Ed.2d 451 (1993); and (3) the jurisdictions which have followed Geoffrey.

¶ 14 In Geoffrey, Inc. v. South Carolina Tax Commission, 313 S.C. 15, 437 S.E.2d 13 (S.C.1993), the South Carolina Supreme Court considered the same constitutional issues as presented by the same party in this case. After concluding that "Geoffrey's reliance on the physical presence requirement in Bellas Hess is misplaced," the Geoffrey Court explained that "[t]he U.S. Supreme Court [in Quill] recently revisited the physical presence requirement of Bellas Hess and, while reaffirming its vitality as to sales and use taxes, noted that the physical presence requirement had not been extended to other types of taxes." Geoffrey, 437 S.E.2d at 18, n. 4. (Emphasis in original.) More importantly, the Geoffrey Court ultimately held that "by licensing intangibles for use in this State and deriving income from their use here, Geoffrey has a 'substantial nexus' with South Carolina." 437 S.E.2d at 18.

¶ 15 The Lanco Court relied predominantly on A & F Trademark, Inc. v. Tolson, 167 N.C.App. 150, 605 S.E.2d 187 (N.C.App. 2004), cert. denied, —— U.S. ——, 126 S.Ct. 353, 163 L.Ed.2d 62 (October 2005), in which the North Carolina Court of Appeals upheld corporate franchise and income taxes assessed against nine "trademark holding companies," each of which is a wholly-owned, non-domiciliary subsidiary corporation of the Limited, Inc., an Ohio corporation. The Lanco Court found persuasive, as do we, the A & F Court's three reasons for declining to adopt the broader reading of Quill as requiring a physical presence for income tax pur-

poses. The A & F Court stated, in pertinent part:

First, the tone in the Quill opinion hardly indicates a sweeping endorsement of the bright-line test it preserved, and the Supreme Court's hesitancy to embrace the test certainly counsels against expansion of it ... The [Supreme] Court further observed the physical-presence test, though offset by the clarity of the rule, was "artificial at its edges" ... In addition, the Court twice noted that in other types of taxes, it had never articulated the same physical-presence requirement adopted in Bellas Hess, but cautioned that the failure to expand the Bellas Hess rule established for sales and use taxes to other types of taxes did not imply that the Bellas Hess rule for sales and use taxes was vestigial or disapproved. Nonetheless, the Court's choice to abstain from rejecting the Bellas Hess rule as applied to use and sales taxes fails to argue persuasively that the rule should, for lack of rejection, be augmented to cover other types of taxes. While the Supreme Court may ultimately choose to expand the scope of the physical-presence test reaffirmed in Quill beyond sales and use taxes, its equivocal reaffirmation of that test does not readily make that choice self-evident.

Second, retention of the Bellas Hess test was grounded, in no small part, on the principle of stare decisis and the "substantial reliance" on the physical-presence test, which had "become part of the basic framework of a sizable industry." Neither consideration advocates for the position adopted by the taxpayers in the present case....

Third, there are important distinctions between sales and use taxes and income and franchise taxes "that makes the physical presence test of the vendor use tax collection cases inappropriate as a nexus test." "The use tax collection cases were based on the vendor's activities in the state, whereas" the income and franchise taxes in the instant case are based solely on "the use of [the taxpayer's] property in th[is] state by the licensee[s]" and not on any activity by the taxpayers in this State. ... Since the tax at issue in this case is

*not based* on the taxpayer's activity in North Carolina, *but rather on the taxpayers' receipt of income from the use of the taxpayers' property in this State by a commonly-owned third party,* "it would [be] inappropriate and, indeed, anomalous ... [to determine] nexus by [the taxpayers'] activities or [their] physical presence" in North Carolina. Moreover, "[u]nlike an income tax, a sales and use tax can make the taxpayer an agent of the state, obligated to collect the tax from the consumer at the point of sale and then pay it over to the taxing entity." "[A] state income tax is usually paid only once a year, to one taxing jurisdiction and at one rate, [but] a sales and use tax can be due periodically to more than one taxing jurisdiction within a state and at varying rates."

Given these reasons, we reject the contention that physical presence is the *sine qua non* of a state's jurisdiction to tax under the Commerce Clause for purposes of income and franchise taxes. Rather, we hold that under facts such as these where a wholly-owned subsidiary licenses trademarks to a related retail company operating stores located within North Carolina, there exists a substantial nexus with the State sufficient to satisfy the Commerce Clause. 605 S.E.2d at 194–195. (Cites omitted; emphasis added.)

¶ 16 The remaining cases cited by Geoffrey ignore the essential question underlying the Commerce Clause jurisprudence in the area of state taxation—whether the tax unduly burdens interstate commerce—in determining whether there is a significant reason to differentiate constitutionally between sales and use taxes and income taxes. In *J.C. Penney Nat'l Bank v. Johnson,* 19 S.W.3d 831 (Tenn.Ct.App.1999), *cert. denied,* 531 U.S. 927, 121 S.Ct. 305, 148 L.Ed.2d 245, after concluding that "any constitutional distinctions between the franchise and excise taxes presented here and the use taxes contemplated in *Bellas Hess* and *Quill* are not within the purview of this court to discern," 19 S.W.3d at 839, the Court held, "[i]t is not our purpose to decide whether 'physical pres-

ence' is required under the Commerce Clause." 19 S.W.3d at 842.

¶ 17 *Rylander v. Bandag Licensing Corp.,* 18 S.W.3d 296 (Tex.App.2000), another case cited by Geoffrey, specifically did not address whether physical presence was required in the context of taxation of royalty income from the licensing of intangibles. The tax which it held invalid was a franchise tax based solely on the taxpayer's possession of a license to do business in Texas.[7]

¶ 18 Moreover, an essential part of *Rylander's* reasoning was the view that the relevant question was whether the state "may impose *any* kind of tax in the light of the Commerce Clause," making the type of tax imposed irrelevant to the analysis. 18 S.W.3d, at 299, fn. 2. (Emphasis in original). The Court based this conclusion on the following statement in *Allied–Signal, Inc. v. Director, Division of Taxation,* 504 U.S. 768, 778, 112 S.Ct. 2251, 2258, 119 L.Ed.2d 533 (1992): "[t]he constitutional question in a case such as *Quill Corp.* is whether the State has the authority to tax the corporation at all." However, this statement from *Allied–Signal* is part of a discussion concerning *due process* analysis, and is immediately preceded by a citation to *Quill* which refers to the part of the opinion devoted to *due process. Rylander's* removal of the *Allied–Signal* statement from its context and reliance on that misconstrued statement in reaching its decision severely weakens its persuasiveness.

■ ¶ 19 Like the *Lanco* Court, we are satisfied that the physical presence requirement applicable to use and sales taxes is not applicable to income tax. Based on our review of the record, we further agree with the *Geoffrey* Court's benefits analysis and conclude, in this case, that (1) the real source of Geoffrey's income is not a paper agreement, but the Oklahoma customers of Toys, Inc., (2) by providing an orderly society in which Toys, Inc. conducts business, Oklahoma has made it possible for Geoffrey to earn income pursuant to its licensing agreement, (3) Geoffrey has received protection, benefits, and

7. The Court concluded the taxing authority's pre-appeal arguments and positions prevented the Court from considering whether the receipt of royalty income under a licensing agreement used in the State might satisfy the "substantial nexus" requirement.

opportunities from Oklahoma as manifested by the fact that it earns income in this State, and (4) the tax is rationally related to these protections, benefits, and opportunities because only that portion of Geoffrey's income generated from the use of its intangibles within Oklahoma is being taxed. As a result, we need not address Geoffrey's proposition addressing OTC's alternative conclusion for supporting the tax assessment.[8]

### Due Process

¶ 20 After overruling its decisions which indicated the Due Process Clause requires physical presence, the *Quill* Court determined that, for imposition of a duty to collect use taxes on an out-of-state mail-order vendor, it is sufficient for due process purposes that the vendor "purposefully directed" its activities at residents of the taxing state. 504 U.S. at 308, 112 S.Ct. at 1910. Geoffrey argues it did not "purposefully direct" its activities at residents of Oklahoma and that its licensing activities were only directed to Toys, Inc.

¶ 21 Considering an identical due process challenge, the *Geoffrey* Court stated:

Geoffrey has not been unwillingly brought into contact with South Carolina through the unilateral activity of an independent party. Geoffrey's business is the ownership, licensing, and management of trademarks, trade names and franchises. By electing to license its trademarks and trade names for use by Toys R Us in many states, Geoffrey contemplated and purposefully sought the benefit of economic contact with those states. Geoffrey has been aware of, consented to, and benefit-

ted from Toys R Us's use of Geoffrey's intangibles in South Carolina. Moreover, Geoffrey had the ability to control its contact with South Carolina by prohibiting the use of its intangibles here as it did with other states. 437 S.E.2d at 19.

Based thereon, the Court expressly rejected "Geoffrey's claim that it has not purposefully directed its activities toward South Carolina's economic forum" and held that "by licensing intangibles for use in South Carolina and receiving income in exchange for their use, Geoffrey has the 'minimum connection' with this State that is required by due process." *Geoffrey*, 437 S.E.2d at 16.

¶ 22 The record in this case supports the same considerations that supported the *Geoffrey* Court's rejection of Geoffrey's due process argument. Likewise, we reject the due process argument in this appeal and hold Oklahoma's taxation of Geoffrey's income from licensing of its Marks for use in Oklahoma does not offend due process.

### Apportionment v. Allocation

¶ 23 Because of our conclusion that OTC's imposition of corporate income tax on Geoffrey for the tax years at issue does not violate the Due Process and Commerce Clauses, we must next address Geoffrey's argument that its royalty income must be allocated to Delaware, "the state of its commercial domicile,"[9] pursuant to 68 O.S.2001 § 2358(A)(4)(b), in which is codified the general rule that the situs of intangible property is the owner's domicile. Relying on one of § 2358(A)(4)(b)'s two exceptions, § 2358(A)(4)(b)(2), and 68 O.S.2001 § 2358(A)(5),[10] the ALJ found that Geoffrey

8. The OTC concluded that if the *Quill* physical presence requirement did apply to this case, then it found that Geoffrey is physically present in Oklahoma by reason of "activities performed on behalf of [Geoffrey] by its representative licensee and licensee's employees in Oklahoma."

9. In order to establish a "commercial domicile" and to give a business situs, for purposes of taxation, to intangibles which are used in the business or are incidental to it, they must become integral parts of some local business. *Davis v. Oklahoma Tax Commission*, 1971 OK 109, 488 P.2d 1261.

10. Both parties agree that the exception stated in § 2358(A)(4)(b)(1) does not apply. As relied upon by the parties, the relevant portions of § 2358(A) provide:

For all tax years beginning after December 31, 1981, ...

A. The taxable income of any taxpayer shall be adjusted to arrive at Oklahoma taxable income for corporations ... as follows:

\* \* \* \*

4. Items of the following nature shall be allocated as indicated. Allowable deductions attributable to items separately allocable in subparagraphs a, b and c of this paragraph, whether or not such items of income were

is a "unitary business," [11] and therefore, the net income from the licensing of its intangibles is properly apportionable to the State of Oklahoma. [12]

¶ 24 OTC points out that, despite OTC having raised the issue numerous times below, Geoffrey for the first time in its Brief in chief denies that it is a "unitary business," *i.e.*, "OTC's conclusion that the royalty income is not directly allocated due to the 'unitary' nature of [Geoffrey's] business is *without factual support*" and that "OTC is in error in concluding that Geoffrey's royalty income is subject to apportionment, rather than to direct allocation, by reason of the *allegedly unitary nature* of [Geoffrey's] business." (Emphasis added.)

¶ 25 Other than its statements that are quoted above, Geoffrey makes no argument or discusses in any way the facts supporting that it is not a unitary business. Errors must be affirmatively demonstrated. *Eckel v. Adair*, 1984 OK 86, 698 P.2d 921. A taxpayer has the burden of showing the erroneous nature of a tax assessment. *TPQ Inv. Corp. v. State ex rel. Oklahoma Tax Commission*, 1998 OK 13, 954 P.2d 139; *see also Enterprise Management Consultants, Inc. v. State ex rel. Oklahoma Tax Commission*, 1988 OK 91, 768 P.2d 359. It is the corpo-

rate taxpayer's burden to prove, by clear and cogent evidence, that it is not a unitary business. *See Container Corp. of America v. Franchise Tax Bd.*, 463 U.S. 159, 103 S.Ct. 2933, 77 L.Ed.2d 545 (1983), *rehearing denied*, 464 U.S. 909, 104 S.Ct. 265, 78 L.Ed.2d 248 (1983). Geoffrey has not affirmatively demonstrated on this record that the OTC erred by finding that Geoffrey is a unitary business.

¶ 26 As held by the Court in *Matter of Income Tax Protest of Griffin Television, Inc.*, 1994 OK 35, ¶ 16, 877 P.2d 588, 591, "[§ ] 2358(A)(5) provides that net income or loss derived from a *unitary* business enterprise *shall be taxed* under an *apportionment formula*." (Emphasis added.) Based thereon, we must reject Geoffrey's argument that its royalty income from the use of its intangibles in Oklahoma must be allocated to Delaware.

### CONCLUSION

¶ 27 The imposition of Oklahoma income tax attributable to royalty earned by Geoffrey under a licensing agreement which based that royalty on the sales generated within the State of Oklahoma by Geoffrey's licensee does not offend due process or unduly burden interstate commerce. The OTC order is supported by substantial evidence

actually received, shall be allocated on the same basis as those items:
\* \* \* \*
b. Income from intangible personal property, such as interest, dividends, patent or copyright royalties, and gains or losses from sales of such property, shall be allocated in accordance with the domiciliary situs of the taxpayer, except that:
\* \* \* \*
(2) income from such property which is required to be allocated pursuant to the provisions of paragraph 5 of this subsection shall be allocated as herein provided;
\* \* \* \*
5. The net income or loss remaining after the separate allocation in paragraph 4 of this subsection, being that which is derived from a unitary business enterprise, shall be apportioned to this state on the basis of the arithmetical average of three factors consisting of property, payroll and sales or gross revenue enumerated as subparagraphs a, b and c of

this paragraph. Net income or loss as used in this paragraph includes that derived from patent or copyright royalties, purchase discounts, and interest on accounts receivable relating to or arising from a business activity, the income from which is apportioned pursuant to this subsection, including the sale or other disposition of such property and any other property used in the unitary enterprise.

11. A business that operates in more than one state is a "unitary business" for income tax purposes when operations conducted in one state benefit and are benefitted by operations in one or more states and where the various aspects are so interdependent and of such mutual benefit that they are considered to form one integral business. *Flint Resources Company v. Oklahoma Tax Commission*, 1989 OK 9, 780 P.2d 665.

12. Geoffrey does not raise any error with the ALJ's approval of the application of the "modified one-factor apportionment formula."

and is otherwise free of error. Accordingly, the order is affirmed.

AFFIRMED.

MITCHELL, J., and BELL, J., concur.