984 So.2d 115 (2008)
Cynthia BRIDGES, SECRETARY OF the DEPARTMENT OF REVENUE, STATE of Louisiana
v.
GEOFFREY, INC.
No. 2007 CA 1063.
Court of Appeal of Louisiana, First Circuit.
February 8, 2008.
Writ Denied April 25, 2008.
*117 Jack M. Alltmont, Sharon Cormack Mize, Peter S. Title, April L. Watson, New Orleans, LA, and Barry Kelly, Sharon T. Pierre, Baton Rouge, LA, for Plaintiff/Appellee Cynthia Bridges.
William Grace, Jr., New Orleans, LA, and Paul H. Frankel, Pro Hac Vice, Irwin M. Slomka, Pro Hac Vice, New York, NY, for Defendant/Appellant Geoffrey, Inc.
Before WHIPPLE, GUIDRY, and HUGHES, JJ.
GUIDRY, J.
Geoffrey, Inc. (Geoffrey) appeals from the trial court's judgment, which upheld the State of Louisiana, Department of Revenue's (Department) imposition of corporate income and franchise taxes for the tax years ending January 1995 through January 1998.[1] For the reasons that follow, we affirm.

FACTS AND PROCEDURAL HISTORY
Geoffrey is a Delaware Corporation, formed in 1984 as a holding company in the consolidated group Toys "R" Us, Inc. (Toys "R" Us).[2] As a holding company, Geoffrey owns certain trademarks and trade names of the Toys "R" Us organization, which include "Toys `R' Us," "Kids `R' Us," "Babies `R' Us," and the logo of Geoffrey *118 the giraffe, and licenses these trademarks and trade names to affiliated companies that operate retail stores.
After its formation, Geoffrey entered into an exclusive licensing agreement with Toys "R" Us Delaware, Inc. (Toys "R" Us-Delaware),[3] a corporation in the consolidated Toys "R" Us group that operates approximately 700 retail and children's clothing stores in more than forty states, including stores in Louisiana, under the names Toys "R" Us, Babies "R" Us, and Kids "R" Us. In this licensing agreement, Geoffrey gave Toys "R" Us-Delaware exclusive use of Toys "R" Us trademarks and trade names in exchange for a royalty fee, which fee was calculated as a percentage of net sales in Toys "R" Us-Delaware retail stores in over forty states, including the eight to eleven retail stores in Louisiana using the Toys "R" Us trademarks.[4]
Toys "R" Us-Delaware filed Louisiana corporate income tax and franchise tax returns on which it took a royalty expense deduction for royalties it paid to Geoffrey. However, Geoffrey did not own or lease real or tangible personal property, did not have offices or employees in Louisiana, did not register to do business in Louisiana, and did not register its trademarks and trade names in Louisiana (because they were federally registered). Accordingly, despite its receipt of royalty payments, Geoffrey did not file Louisiana corporate income or franchise tax returns for the years at issue.
The Department thereafter conducted a corporate income and franchise tax examination and audit of Geoffrey for the tax years ending January 1995 through January 1998. Based on the audit findings, the Department determined that Geoffrey owed Louisiana corporate income and franchise taxes for the years at issue. Particularly, the Department determined that pursuant to La. R.S. 47:287.92, et seq., Geoffrey owed corporate income tax on the portion of its income allocable to Louisiana because of Geoffrey's receipt of royalty income from use of its intangibles in Louisiana.
On September 28, 2000, the Department sent a proposed assessment to Geoffrey. Thereafter, on December 23, 2002, the Department filed a petition to collect taxes, claiming pursuant to La. R.S. 47:287.67, 47:287.92(B), 47:287.93(A)(2) and 47:601, Geoffrey was subject to Louisiana corporate income and franchise taxes for the tax years ending January 1995 through January 1998 because it derived substantial income from the income producing use of its trademarks and trade names in Louisiana.
On February 12, 2003, Geoffrey filed a declinatory exception raising the objection of lack of personal jurisdiction. In a judgment signed on December 18, 2003, the trial court overruled Geoffrey's exception. This judgment was not appealed. A trial on the merits was held on November 20 and 21, 2006. On February 12, 2007, the trial court signed a judgment in favor of the Department and against Geoffrey, upholding the assessment of corporate income and franchise taxes for the years at issue, plus awarding a delinquency penalty, interest, and attorney's fees. In its reasons for judgment, the trial court found first, that the Department sustained its burden in proving that Geoffrey owed corporate income and franchise taxes. Based *119 on a joint stipulation of fact entered into evidence, and the applicable law, the trial court determined that Geoffrey derived income from sources within Louisiana, that the income came from royalties from the use of trademarks and trade names, and that the trademarks and trade names were used within Louisiana. The trial court then considered Geoffrey's affirmative defense that application of the taxing statutes to Geoffrey in the manner suggested by the Department is violative of the Commerce Clause of the United States Constitution.
The court, after examining the United States Supreme Court decisions in Quill Corp. v. North Dakota, 504 U.S. 298, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992) and National Bellas Hess, Inc. v. Department of Revenue of State of Illinois, 386 U.S. 753, 87 S.Ct. 1389, 18 L.Ed.2d 505 (1967), determined that Quill's physical presence requirement for establishing a substantial nexus with the taxing state was limited to the area of sales and use taxes. The trial court recognized and found persuasive the Geoffrey, Inc. v. South Carolina Tax Commission, 313 S.C. 15, 437 S.E.2d 13 (1993), cert. denied, 510 U.S. 992, 114 S.Ct. 550, 126 L.Ed.2d 451 (1993) lines of cases, which chose not to follow Quill in the area of corporate income and franchise taxes. The trial court then went on to outline recent cases in Louisiana addressing Quill, though none of these cases squarely addressed the application of a physical presence requirement to challenges under the Commerce Clause of imposition of corporate income or franchise taxes. Ultimately, the trial court concluded, relying on Secretary, Department of Revenue, State of Louisiana v. Gap (Apparel), Inc., 04-0263 (La.App. 1st Cir.6/25/04), 886 So.2d 459 and Bridges v. Autozone Properties, Inc., 04-0814 (La.3/24/05), 900 So.2d 784, that Geoffrey's income is generated within Louisiana and therefore, an assessment by the Department of corporate income and franchise taxes did not violate the protection afforded Geoffrey under the Due Process or Commerce Clauses.
Geoffrey now appeals from this judgment and asserts that the trial court erred in:
1. failing to hold that the Commerce Clause of the United States Constitution and United States Supreme Court precedent prohibit the [Department] from subjecting Geoffrey to tax.
2. failing to hold that the Louisiana tax statute is vague and ambiguous and should be strictly construed against the [Department],
3. failing to hold that the Secretary exceeded her authority in promulgating the regulation at issue.
4. in holding that the [Department] met its burden of proof that Geoffrey earned income from Louisiana sources.
5. in holding that it do not have authority to review the imposition of penalties by [the Department].

DISCUSSION

Burden of Proof
Because the Department initially bore the burden of proof at trial to establish that Geoffrey owed the corporate income tax assessed for the tax years ending January 1995 through January 1997, we first address Geoffrey's argument that the trial court erred in finding that the Department met its burden of proof on this issue.[5]
*120 At the time of the tax assessments at issue, La. R.S. 47:287.67 imposed a corporate income tax on "net income which is earned within or derived from sources within the state of Louisiana." Louisiana Revised Statute 47:287.92(B) provided that income from "[r]oyalties or similar revenue from the use of patents, trademarks, copyrights, secret processes, and other similar intangible rights" is considered "allocable income" under the Louisiana tax law. Further, La. R.S. 47:287.93(A)(2) provided that "[r]oyalties or similar revenue from the use of patents, trademarks, copyrights, secret processes, and other similar intangible rights shall be allocated to the state or states in which such rights are used."[6] Additionally, LAC § 61:I:1130(A)(5) provided that "[r]oyalties or similar revenue received for the use of patents, trademarks, copyrights, secret processes, and other similar intangible rights shall be allocated to the states in which such rights are used [and][t]he use referred to is that of the licensee rather than the licensor."
Accordingly, in order for the Department to meet its burden in establishing that Geoffrey owed corporate income tax for the years at issue, it had to establish: (1) Geoffrey had income derived from sources within the state; (2) the income came from royalties from the use of trademarks; and (3) the trademarks were used in Louisiana.
At the trial on the merit s, Geoffrey and the Department introduced into evidence a joint stipulation of fact. According to this stipulation, Toys "R" Us-Delaware operated between eight and eleven retail stores in Louisiana, which used the licensed trademarks. Additionally, under the terms of the licensing agreement, Toys "R" Us-Delaware agreed to pay Geoffrey a royalty calculated as three percent of the net sales of Toys "R" Us-Delaware in its Toys "R" Us retail stores and two percent of its net sales in its Kids "R" Us retail stores.
Additionally, the joint stipulation clearly states that Geoffrey owned and licensed the trademarks to affiliated companies, namely Toys "R" Us-Delaware, which used the trademarks in its operation of retail stores in over forty states, including Louisiana, and paid Geoffrey a royalty fee calculated as a percentage of its nets sales in its stores.
Finally, with regard to establishing the amount of corporate income tax owed, in addition to the Department introducing the audit schedule, tax assessment and supporting documentation, the joint stipulation specifically states that Geoffrey does not dispute the accuracy of the mathematical computations of the amounts alleged to be due as reflected in an attached Department schedule.
Therefore, from our review of the record, we do not find that the trial court erred in determining that the Department met its burden in establishing that Geoffrey owed corporate income taxes for the tax years at issue and the amount of the taxes owed.
Statutory Validity
We next address Geoffrey's defense that the Louisiana tax statutes are *121 vague and ambiguous.[7] It is a well-settled principle of statutory construction that absent clear evidence of a contrary legislative intention, a statute should be interpreted according to its plain language. Cleco Evangeline, LLC v. Louisiana Tax Commission, 01-2162, p. 5 (La.4/3/02), 813 So.2d 351, 354. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. C.C. art. 9. The meaning and intent of a law is determined by a consideration of the law in its entirety and all other laws on the same subject matter, and the court's construction should be placed on the provision in question which is consistent with the express terms of law and with the obvious intent of the lawmaker in enacting it. Bridges, 04-0814 at p. 22, 900 So.2d at 799. These principles apply equally to tax statutes. Cleco, 01-2162 at p. 5, 813 So.2d at 354.
Geoffrey first asserts that the language "earned within or derived from sources within the state of Louisiana" in La. R.S. 47:287.67 is ambiguous because "derived from sources within" is not clearly defined in the statute and could refer to income derived from in-state tangible property or to income from in-state customers. However, we do not find that the statute's failure to limit "sources" makes the statutory provision ambiguous. Rather, reading the plain language of the statute and giving the words of law their generally prevailing meaning, it can be understood that the legislature intended that income derived from any source within Louisiana be considered taxable income.
Additionally, Geoffrey contends that La. R.S. 47:287.93(A)(2), which provides that "[r]oyalties or similar revenue from the use of patents, trademarks . . . and other similar intangible rights shall be allocated to the state or states in which such rights are used," is ambiguous because it does not indicate whether such "use" of trademarks means use by the licensee or use by the licensor. However, reading the plain language of the statute as a whole, it is evident that the "use" referred to is use by the licensee. Pursuant to licensing agreements, licensees obtain the right to "use" trademarks, patents, etc. and pay licensors royalties for that right. Further, even Geoffrey's own witness, Peter Weiss, who served as Director, Secretary and Treasurer of Geoffrey during the tax years at issue, acknowledged that Geoffrey chose to "license those trademarks for use by . . . affiliates, in this case [Toys "R" Us-Delaware,] and unaffiliated[d], third part[ies.]" Words defining a thing to be taxed should not be extended beyond their clear import. Cleco, 01-2162 at p. 6, 813 So.2d at 355. Accordingly, we find no merit to Geoffrey's contention that "use" could be construed as to apply to any use other than that by the licensee. Therefore, we find Geoffrey's argument that La. R.S. 47:287.67 and 287.93(A)(2) are vague and ambiguous to be without merit.[8]
*122 Constitutional Limitations
A state's jurisdiction to tax a nonresident corporation is subject to the limitations of the Due Process Clause of the Fourteenth Amendment and the Commerce Clause of the United States Constitution. Bridges, 04-0814 at p. 24, 900 So.2d at 800. In Quill Corp. v. North Dakota, 504 U.S. 298, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992), the United States Supreme Court, for the first time, detailed the distinctions between the concerns and requirements under the Due Process Clause and those under the Commerce Clause.
The Due Process Clause concerns the fundamental fairness of government activity and requires some definite link, some minimum connection between a state and the person, property, or transaction it seeks to tax, and the income attributed to the state for tax purposes must be rationally related to values connected with the taxing state. Quill, 504 U.S. at 306 and 312, 112 S.Ct. at 1909-1910 and 1913. Citing International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and its progeny, the Court in Quill reiterated the relevant inquiry as whether a defendant had minimum contacts with the jurisdiction such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. Quill, 504 U.S. at 307, 112 S.Ct. at 1910.
When deciding Due Process issues, the Court has abandoned more formalistic tests that focus on a defendant's presence within a state in favor of a more flexible inquiry into whether a defendant's contacts with the forum made it reasonable, in the context of our federal system of government, to require it to defend suit in that state. Quill, 504 U.S. at 307, 112 S.Ct. at 1910. Under these principles, if a non-resident corporation purposefully avails itself of the benefits of an economic market in the forum state, it may subject itself to the state's in personam jurisdiction even if it has no physical presence in the state. Quill, 504 U.S. at 307, 112 S.Ct. at 1911. Accordingly, requirements of Due Process may be met irrespective of a corporation's lack of physical presence in the taxing state. Quill, 504 U.S. at 308, 112 S.Ct. at 1910.
Conversely, the Commerce Clause concerns the effects of state regulation on the national economy and is a means for limiting state burdens on interstate commerce. See Quill, 504 U.S. at 312, 112 S.Ct. at 1913. As the Court in Quill reiterated, a tax will be sustained against a commerce clause challenge so long as it meets the four-part test enunciated in Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 279, 97 S.Ct. 1076, 1079, 51 L.Ed.2d 326 (1977), which requires that the tax is (1) applied to an activity with a substantial nexus with the taxing state, (2) is fairly apportioned, (3) does not discriminate against interstate commerce, and (4) is fairly related to the services provided by the state. Quill, 504 U.S. at 311, 112 S.Ct. at 1912.
*123 With regard to the "substantial nexus" prong of the Complete Auto Transit test, the Court in Quill maintained the bright-line physical presence requirement in the area of sales and use taxes originally established by National Bellas Hess, Inc. v. Department of Revenue of State of Illinois, 386 U.S. 753, 87 S.Ct. 1389, 18 L.Ed.2d 505 (1967). Quill, 504 U.S. at 317, 112 S.Ct. at 1916. However, the question left unanswered by the Court in Quill is the issue that Geoffrey raises before this court for consideration: does the physical presence requirement applicable to determining the constitutionality of requiring an out-of-state vendor to collect sales and use taxes on in-state sales under the Commerce Clause extend to other types of state taxes? This question has never been squarely addressed by the courts of this state.[9] Therefore, we must examine the Court's reasoning in Quill and legal authority from other jurisdictions in order to resolve this issue.
At the outset, we note that both Quill and Bellas Hess involved attempts by a state to require out-of-state mail order vendors to collect and pay use taxes on goods purchased within the state despite the vendors having no in-state outlets or sales representatives. The Court in Quill made a point to clarify that "[w]hile contemporary Commerce Clause jurisprudence might not dictate the same result were the issue to arise for the first time today," the Bellas Hess bright-line physical presence requirement is not inconsistent with the four-part test in Complete Auto Transit, which the Court described as "[continuing] to govern the validity of state taxes under the Commerce Clause." Quill, 504 U.S. at 310-311, 112 S.Ct. at 1912. However, the Court in Quill further elaborated that in "our cases subsequent to Bellas Hess and concerning other types of taxes we have not adopted a similar bright-line, physical-presence requirement, [but] our reasoning in those cases does not compel that we now reject the rule that Bellas Hess established in the area of sales and use taxes . . . [t]o the contrary, the continuing value of a bright-line rule in this area and the doctrine and principles of stare decisis indicate that the Bellas Hess rule remains good law." Quill, 504 U.S. at 317, 112 S.Ct. at 1916 (emphasis added.) Therefore, the language in Quill impliedly suggests that the physical presence requirement is limited to the area of sales and use taxes and does not apply to the imposition of other state taxes.
In Geoffrey, Inc. v. South Carolina Tax Commission, 313 S.C. 15, 437 S.E.2d 13 (S.C.1993), cert denied, 510 U.S. 992, 114 S.Ct. 550, 126 L.Ed.2d 451 (1993), the South Carolina Supreme Court addressed the same constitutional issue present in *124 the instant case with regard to the same defendant under an identical factual situation. There, the court found that "Geoffrey's reliance on the physical presence requirement of Bellas Hess is misplaced." Geoffrey I, 437 S.E.2d at 18. The court further explained in a footnote that "[t]he U.S. Supreme Court recently revisited the physical presence requirement of Bellas Hess and, while reaffirming its vitality as to sales and use taxes, noted that the physical presence requirement had not been extended to other types of taxes." Geoffrey I, 437 S.E.2d at 18, n. 4 (emphasis in original, citations omitted). The court ultimately determined that "by licensing intangibles for use in this State and deriving income from their use here, Geoffrey has a `substantial nexus' with South Carolina." Geoffrey I, 437 S.E.2d at 18.[10]
Other jurisdictions have expanded on the reasoning set forth in Geoffrey I and have found that the physical presence requirement in Quill only applies to sales and use taxes and does not extend to corporate income and franchise taxes. In A & F Trademark, Inc. v. Tolson, 167 N.C.App. 150, 605 S.E.2d 187 (2004), cert denied, 546 U.S. 821, 126 S.Ct. 353, 163 L.Ed.2d 62 (2005), the North Carolina Court of Appeals upheld the assessment of corporate income and franchise taxes against nine trademark holding companies, each of which was a wholly-owned, non-domiciliary subsidiary corporation of Limited, Inc., an Ohio Corporation. In reaching this decision, the court in A & F articulated three reasons for declining to adopt a broader reading of Quill as requiring a physical presence in the taxing state in order to sustain an assessment of state income and franchise taxes. The court stated:
First, the tone in the Quill opinion hardly indicates a sweeping endorsement of the bright-line test it preserved, and the Supreme Court's hesitancy to embrace the test certainly counsels against expansion of it. In its discussion of the Commerce Clause, the Supreme Court briefly summarized the numerous and shifting analyses endorsed since recognition of the dormant Commerce Clause. The Court went on to note that, while Bellas Hess did not conflict with recent Commerce Clause cases, "contemporary Commerce Clause jurisprudence might not dictate the same result were the issue to arise for the first time today." Quill, 504 U.S. at 311, 112 S.Ct. at 1912, 119 L.Ed.2d at 105. The Court stated that the evolution of its "recent Commerce Clause decisions . . . signaled a `retreat from the formalistic constrictions of a stringent physical presence test in favor of a more flexible substantive approach[.]'" Quill, 504 U.S. at 314, 112 S.Ct. at 1914, 119 L.Ed.2d at 107. The Court further observed the physical-presence test, though offset by the clarity of the rule, was "artificial at its edges." Quill, 504 U.S. at 315, 112 S.Ct. at 1914, 119 L.Ed.2d at 108. In addition, the Court twice noted that in other types of taxes, it had never articulated the same physical-presence requirement adopted in Bellas Hess, see Quill, 504 U.S. at 314 and 317, 112 S.Ct. at 1914 and 1915, 119 L.Ed.2d at 108 and 110, but cautioned that the failure to expand the Bellas Hess rule established for sales and use taxes to other types of taxes did not imply that the Bellas Hess *125 rule as applied to sales and use taxes was vestigial or disapproved. Id. Nonetheless, the Court's choice to abstain from rejecting the Bellas Hess rule for sales and use taxes fails to argue persuasively that the rule should, for lack of rejection, be augmented to cover other types of tax. While the Supreme Court may ultimately choose to expand the scope of the physical-presence test reaffirmed in Quill beyond sales and use taxes, its equivocal reaffirmation of that test does not readily make that choice self-evident.
Second, retention of the Bellas Hess test was grounded, in no small part, on the principle of stare decisis and the "substantial reliance" on the physical-presence test, which had "become part of the basic framework of a sizable industry." Quill, 504 U.S. at 317, 112 S.Ct. at 1916, 119 L.Ed.2d at 110. Neither consideration advocates for the position adopted by the taxpayers in the present case. We need look no further than the language in Quill to summarily dispense with the possibility that stare decisis plays an analogous role in the instant case: the Supreme Court, as noted before, twice expressed that the bright-line, physical-presence requirement of Bellas Hess had not been adopted in other forms of taxation. Moreover, since the physical-presence requirement has never been established by judicial precedent for other forms of taxation and since this form of tax reduction in the instant case is relatively new, we dismiss the possibility that analogous substantial reliance, as contemplated in Quill, exists in this case.
Third, there are important distinctions between sales and use taxes and income and franchise taxes "that makes the physical presence test of the vendor use tax collection cases inappropriate as a nexus test[.]" Jerome R. Hellerstein, Geoffrey and the Physical Presence Nexus Requirement of Quill, 8 State Tax Notes 671, 676 (1995). "[T]he use tax collection cases were based on the vendor's activities in the state, whereas" the income and franchise taxes in the instant case are based solely on "the use of [the taxpayer's] property in th[is] state by the licensee[s]" and not on any activity by the taxpayers in this State. Id. The "Supreme Court has made it clear that the presence of the recipient of income from intangible property in a state is not essential to the state's income tax on income of a nonresident." Id. (citing International Harvester Co. v. Wisconsin Dept. of Taxation, 322 U.S. 435, 441-42, 64 S.Ct. 1060, 1063-64, 88 L.Ed. 1373, 1380 (1944) for the proposition that states are entitled to tax a non-resident's income to the extent it is "fairly attributable either to property located in the state or to events or transactions which, occurring there, are subject to state regulation and which are within the protection of the state and entitled to the numerous other benefits which it confers"). Since the tax at issue in this case is not based on the taxpayers' activity in North Carolina, but rather on the taxpayers' receipt of income from the use of the taxpayers' property in this State by a commonly-owned third party, "it would [be] inappropriate and, indeed, anomalous . . . [to determine] nexus by [the taxpayers'] activities or [their] physical presence" in North Carolina. Id. Moreover, "[u]nlike an income tax, a sales and use tax can make the taxpayer an agent of the state, obligated to collect the tax from the consumer at the point of sale and then pay it over to the taxing entity." Kmart Properties, Inc. v. Taxation and Revenue Dep't. of New Mexico, No. 21,140, 139 N.M. 177, 185, 131 P.3d 27, 35 (App. *126 2001) ("Kmart"). "[A] state income tax is usually paid only once a year, to one taxing jurisdiction and at one rate, [but] a sales and use tax can be due periodically to more than one taxing jurisdiction within a state and at varying rates." Id., at 35.

A & F Trademark, Inc., 605 S.E.2d at 194-195.
Given these reasons, the court in A & F rejected the contention that physical presence is the sine qua non of a state's jurisdiction to tax under the Commerce Clause for purposes of income and franchise taxes. A & F Trademark, Inc., 605 S.E.2d at 195. Rather, the court held that "where a wholly-owned subsidiary licenses trademarks to a related retail company operating stores located within North Carolina, there exists a substantial nexus with the State sufficient to satisfy the Commerce Clause." A & F Trademark, Inc., 605 S.E.2d at 195.
The reasoning articulated in A & F was later adopted and followed by the Oklahoma Court of Civil Appeals in Geoffrey, Inc. v. Oklahoma Tax Commission, 132 P.3d 632 (Okla.Civ.App.2005) ("Geoffrey II") and the Supreme Court of Appeals of West Virginia in Tax Commissioner of the State of West Virginia v. MBNA America Bank, 220 W.Va. 163, 640 S.E.2d 226 (2006), cert denied sub nom., FIA Card Services, N.A. v. Tax Commissioner of West Virginia, ___ U.S. ___, 127 S.Ct. 2997, 168 L.Ed.2d 719 (2007).
In Geoffrey II, a case involving the same defendant and factual situation as is present in the instant matter, the court determined after reviewing Geoffrey I, A & F, and cases relied on by Geoffrey that the physical presence requirement applicable to sales and use taxes is not applicable to income tax. The court further adopted Geoffrey I's benefits analysis and concluded that: (1) the real source of Geoffrey's income is not a paper agreement, but the Oklahoma customers of Toys, Inc., (2) by providing an orderly society in which Toys, Inc. conducts business, Oklahoma has made it possible for Geoffrey to earn income pursuant to its licensing agreement, (3) Geoffrey has received protection, benefits, and opportunities from Oklahoma as manifested by the fact that it earns income in this State, and (4) the tax is rationally related to these protections, benefits, and opportunities because only that portion of Geoffrey's income generated from use of its intangibles within Oklahoma is being taxed. Geoffrey II, 132 P.3d at 638-639. Accordingly, the court determined that the imposition of Oklahoma income tax attributable to royalty income earned by Geoffrey under a licensing agreement that based that royalty on the sales generated within the State of Oklahoma by Geoffrey's licensee does not unduly burden interstate commerce. Geoffrey II, 132 P.3d at 640.
Additionally, the court in MBNA, though not citing A & F, outlined three substantially similar reasons for its conclusion that the physical presence requirement for showing a substantial nexus under the Commerce Clause applies only to sales and use taxes and not to corporate income and franchise taxes. Further, the court determined that a "significant economic presence" test is a better indicator of whether a substantial nexus exists for Commerce Clause purposes. MBNA America Bank, 640 S.E.2d at 234. The significant economic presence test incorporates due process purposeful direction towards a state while examining the degree to which a company has exploited a local market. Accordingly, a Commerce Clause analysis under this approach requires the examination of the frequency, quantity and systemic nature of a taxpayer's economic contacts with a state. MBNA America *127 Bank, 640 S.E.2d at 234. The court found that MBNA had continuously and systematically engaged in direct mail and telephone solicitation and promotion in West Virginia, had significant gross receipts attributable to West Virginia customers, and therefore, had a significant economic presence sufficient to meet the substantial nexus prong of the Complete Auto Transit test. MBNA America Bank, 640 S.E.2d at 235-236.
Geoffrey, however, relies on several appellate decisions where the courts of those states applied Quill's physical presence requirement to taxes other than sales and use taxes. However, we do not find these cases to be persuasive. First, in J.C. Penney National Bank v. Johnson, 19 S.W.3d 831 (Tenn.Ct.App.1999), cert denied, 531 U.S. 927, 121 S.Ct. 305, 148 L.Ed.2d 245 (2000), the court examined the assessment of corporate franchise and excise taxes against a nonresident corporation that engaged in credit card lending through the issuance of Visa and MasterCard credit cards. However, the court in J.C. Penney ultimately determined that "[a]ny constitutional distinctions between the franchise and excise taxes presented here and the use taxes contemplated in Bellas Hess and Quill are not within the purview of this court to discern." J.C. Penney National Bank, 19 S.W.3d at 839. Specifically, the court in J.C. Penney found no basis for concluding that the analysis should be different in that case despite Bellas Hess and Quill's focus on sales and use taxes. However, the court later held that it was not their purpose to decide whether physical presence is required under the Commerce Clause. J.C. Penney National Bank, 19 S.W.3d at 842. Additionally, the court in J.C. Penney relied primarily on the fact that the Commissioner in that case did not present any argument and did not provide any authority as to why the Commerce Clause analysis should be different for franchise and excise taxes. J.C. Penney National Bank, 19 S.W.3d at 839. Therefore, because the court in J.C. Penney specifically declined to address the precise issue before this court, we find its holding to have little value to our determination of the instant case.
Likewise, Rylander v. Bandag Licensing Corp., 18 S.W.3d 296 (Tex.App.2000), involved the validity of a tax assessment based solely on the taxpayer's possession of a license to do business in Texas. The court, relying on language from Allied-Signal, Inc. v. Director of Taxation, 504 U.S. 768, 778, 112 S.Ct. 2251, 119 L.Ed.2d 533 (1992) found that the basic issue was whether the state may impose any kind of tax under the Commerce Clause, and in that light it saw no principled distinction between the sales and use taxes involved in Bellas Hess and Quill and the imposition of other types of state taxes. Rylander, 18 S.W.3d at 299-300. However, as recognized by the court in Geoffrey II, the language from Allied-Signal relied on by the court in Rylander was taken from the Court's discussion concerning Due Process, and is immediately preceded by a citation to Quill, also referring to the part of that opinion devoted to Due Process. Therefore, like the court in Geoffrey II, we find the persuasiveness of this case to be diminished. Geoffrey II, 132 P.3d at 638.
Finally, Geoffrey asserts that the economic burdens of a state corporate income tax are comparable to, if not greater on, interstate business than sales or use taxes. Notably, Geoffrey offers no authority for this proposition, but merely states that in addition to the administrative burden generally imposed in a sales or use tax, an income tax imposes both administrative burdens and a direct financial obligation to the out-of-state business. The court in MBNA addressed an identical argument *128 and after finding that Bellas Hess and Quill placed significant weight on the fact that there are substantial compliance burdens attached to the collection of sales and use taxes, rejected MBNA's claim that the imposition of direct taxes is a greater burden than the duty to collect taxes. MBNA America Bank, 640 S.E.2d at 235. Likewise, we find Geoffrey's argument on this issue to be without merit.
Accordingly, after reviewing Quill, and the cases and arguments outlined above, we find the Geoffrey I line of cases to be more persuasive, and accordingly, we find that Quill's physical presence requirement for establishing a substantial nexus under the Commerce Clause applies only to sales and use taxes and does not extend to the corporate income and franchise taxes at issue.
Further, the facts in this case establish that Geoffrey entered into a licensing agreement with Toys "R" Us-Delaware, whereby the parties agreed that Toys "R" Us-Delaware would pay Geoffrey a royalty fee based on three percent of Toys "R" Us-Delaware's net sales in its Toys "R" Us stores and two percent of net sales its Kids "R" Us stores in over forty states, including Louisiana, in exchange for Geoffrey granting Toys "R" Us-Delaware the exclusive right to use those trademarks. Those trademarks were admittedly used by Toys "R" Us-Delaware in approximately eight to eleven stores in Louisiana and Geoffrey admittedly received significant royalty income from the use of its trademarks in this state. Accordingly, we find that based on the facts in the record, Geoffrey has a substantial nexus with Louisiana sufficient to satisfy the Commerce Clause."[11]
Penalties
Finally, Geoffrey asserts that the trial court erred in failing to consider its argument regarding the assessment of penalties. Louisiana Revised Statute 47:1602(A) provides, in part:
When any taxpayer fails to make and file any return required to be made under the provisions of this Subtitle before the time that the return becomes delinquent or when any taxpayer fails to timely remit to the secretary of the Department of Revenue the total amount of tax that is due on a return which he has filed, there shall be imposed, in addition to any other penalties provided, a specific penalty to be added to the tax.
While the language of La. R.S. 47:1602(A) is mandatory, there is a narrow jurisprudential exception to the assessment of penalties based on a taxpayer's good faith, but this exception has only been applied in limited circumstances.[12] *129 Enterprise Leasing Company of New Orleans v. Curtis, 07-0354, p. 6 (La.App. 1st Cir.11/2/07), 977 So.2d 975, 978. However, we do not find that the facts of this case fit within the limited circumstances in which the good faith exception has been applied and particularly, Geoffrey declined to pay any corporate income or franchise tax assessed by the Department, despite knowledge of the South Carolina Supreme Court's decision in Geoffrey I, Accordingly, we do not find any error in the trial court's decision upholding the Department's assessment of a penalty.

CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court finding Geoffrey liable for unpaid corporate income and franchise taxes, penalties, interest, and attorney fees. All costs of this appeal are to be borne by Geoffrey, Inc.
AFFIRMED.
NOTES
[1] The corporate income tax periods at issue are January 31, 1995 through January 31, 1997. The franchise tax years at issue are January 31, 1996 though January 31, 1998.
[2] Prior to January 1, 1996, Toys "R" Us, Inc. was known as Toys "R" Us Headquarters, Inc.
[3] Prior to January 1, 1996, Toys "R" Us Delaware, Inc. was known as Toys "R" Us, Inc.
[4] The royalty fee was calculated as three percent of net sales for use of the trademarks in Toys "R" Us stores and two percent of net sales for use of trademarks in Kids "R" Us stores.
[5] Geoffrey does not assign as error the trial court's determination that the Department established its entitlement to corporate franchise taxes in accordance with La. R.S. 47:601, nor does Geoffrey attack the validity of that statute. Accordingly, we limit our discussion regarding burden of proof and statutory validity to the statutory provisions dealing with the assessment of corporate income taxes.
[6] Louisiana Revised Statute 47:287.93 was subsequently amended by Acts 2002, No. 16, § 11 and Acts 2005, No. 401, § 1.
[7] The Department asserts on appeal that this issue is not properly before the court because it was not listed in the pre-trial order as an issue for trial. However, we note that Geoffrey raised this argument in its answer, as well as in its pre- and post-trial briefs. Further, Geoffrey presented limited testimony on this issue at trial without objection from the Department. Accordingly, we find that it is proper for us to consider this argument on appeal. See Theriot v. State, Department of Wildlife and Fisheries, 94-1536, pp. 4-6 (La. App. 1st Cir.4/7/95), 661 So.2d 986, 989-990, writ denied, 95-1617 (La. 10/6/95), 662 So.2d 1041.
[8] Geoffrey also asserts on appeal that the Secretary of the Department exceeded her authority in promulgating LAC § 61:I.1130(A)(5). While this was listed as a defense in paragraph sixty-three of Geoffrey's answer, it was not listed as an issue before the court in the pre-trial order, was not mentioned in Geoffrey's pre-trial brief and was not presented in argument before the trial court. Accordingly, we find that Geoffrey abandoned this issue in the trial court, and as such, it is not properly before us on appeal. However, even if it were properly before this court for consideration, we would find based on our determination regarding the validity of the tax statutes at issue that the Secretary did not exceed her authority in promulgating a regulation that sets forth a definition of "use" that is apparent from a plain reading of La. R.S. 47:287.93(A)(2).
[9] The Louisiana Supreme Court has addressed the Due Process requirements under Quill, but has never addressed the precise Commerce Clause issue now before the court. See Bridges v. Autozone Properties, Inc., 04-0814 (La.3/24/05), 900 So.2d 784 (wherein the court followed the Due Process analysis articulated in Quill and determined that Louisiana had personal jurisdiction over a nonresident shareholder when Louisiana has provided benefits, opportunities, and protections, which helped to create the income); Kevin Associates, L.L.C. v. Crawford, 03-0211 (La. 1/30/04), 865 So.2d 34 (following Quill and determining that imposition of corporate income and franchise tax on a corporation that had a commercial domicile in Louisiana did not violate the Due Process and Commerce Clauses of the U.S. Constitution); Secretary, Department of Revenue, State of Louisiana v. Gap (Apparel), Inc., 04-0263 (La.App. 1st Cir.6/25/04), 886 So.2d 459 (finding that the state had personal jurisdiction to impose corporate income and franchise taxes on Gap Apparel, Inc., a subsidiary corporation that owned trademarks and earned royalty income from in-state affiliate's use of those trademarks, based on the intangible trademarks having acquired a business situs in Louisiana).
[10] In Bridges, the Louisiana Supreme Court recognized Geoffrey I as the leading case on a state's taxing jurisdiction over non-residents based on the non-residents' intangible property and is the leading case among states that have asserted their tax jurisdiction over non-resident entities without a physical presence in the state. Bridges, 04-0814 at pp. 6 and 31, 900 So.2d at 789 and 805.
[11] On appeal, Geoffrey does not address the remaining prongs of the Complete Auto Transit test, but rather, limits its argument to the substantial nexus requirement. Accordingly, we do not address the remaining prongs of the Complete Auto Transit test. However, we note that Geoffrey I and Geoffrey II determined under identical facts involving the same defendant that the remaining prongs of the Complete Auto Transit test were satisfied, and we would be inclined to follow that approach. Geoffrey I, 437 S.E.2d at 24, n. 5; Geoffrey II, 132 P.3d at 638-639.
[12] See BP Oil Company v. Plaquemines Parish Government, 93-1109 (La.9/6/94), 651 So.2d 1322 (An award of penalties on summary judgment was reversed because there was a genuine issue of material fact as to the taxpayer's good faith and the taxpayer was entitled to a trial on the issue.); St. Pierre's Fabrication and Welding, Inc. v. McNamara, 495 So.2d 1295 (La. 1986) (The supreme court recognized the equitable situation warranting the taxpayer relief from penalties, but not the taxes or interest due, where the state, through the department of revenue and taxation, specifically informed the taxpayer that it was not liable for the state sales tax in question.); and J. Ray McDermott, Inc. v. Morrison, 96-2337 (La.App. 1st Cir.11/7/97), 705 So.2d 195, writs denied, 97-3055, 97-3062 (La.2/13/98), 709 So.2d 753, 754 (The First Circuit affirmed the trial court's decision that a taxpayer was not liable for penalties where the taxpayer in good faith paid the sales and use taxes due, but incorrectly paid the taxes to Texas rather than to Louisiana.).